(110 So. 904)

**INDUSTRIAL FINANCE CORPORATION v. TURNER.　(6 Div. 396.)**

(Supreme Court of Alabama.　Nov. 4, 1926. Rehearing Denied Jan. 20, 1927.)

**1. Detinue ⬿5—Plaintiff must show interest in property sued for, coupled with unqualified right to immediate possession.**

Plaintiff in detinue action has burden of showing either a general or special interest in property sued for, coupled with unqualified right to its immediate possession.

**2. Detinue ⬿5—Proof of equitable title without proof of right to possession will not support recovery.**

Proof of equitable title without supplemental proof of accompanying right to possession will not support recovery in detinue.

**3. Sales ⬿201(4)—Title to goods consigned to shipper's order remains in owner until delivery of bill of lading to purchaser.**

Where owner shipped goods on bill of lading consigned to his own order, legal title to goods is retained in owner until bill of lading is delivered to purchaser.

**4. Carriers ⬿56—Indorsing bill of lading consigned to shipper's own order in blank and delivery to another passes legal title to transferee.**

Where bill of lading, consigned to shipper's own order, is indorsed in blank by owner, and delivered to another, legal title passes to such transferee, particularly where such transferee paid the purchase price or part thereof on behalf of third persons.

**5. Chattel mortgages ⬿172(5)—Trust receipts issued to finance corporation by purchaser on delivery of bill of lading held admissible in detinue action for automobiles.**

Where seller of automobiles shipped cars on bills of lading to its own order, and indorsed bill of lading in blank, and delivered same to finance corporation, which advanced greater portion of purchase price, and subsequently delivered bills of lading to purchaser on his executing a trust receipt continuing title in finance corporation, such trust receipts were admissible in subsequent action in detinue by finance corporation to recover automobiles as prima facie establishing title in the finance corporation.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action by the Industrial Finance Corporation against J. B. Turner. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The action is statutory detinue begun by the plaintiff, Industrial Finance Corporation, against Holcomb Motor Company, J. H. Holcomb, and Leon Jones, as defendants for the recovery of 50 Studebaker motor cars. After the execution of the writ of seizure, J. B. Turner appeared as claimant of the property seized, and filed his statutory affidavit and bond. The issue was thereupon made up between plaintiff and the claimant, as defendant, and duly tried before a jury.

Plaintiff's business in the city of Birmingham, where all the parties reside, is the advancement of money to finance the purchase of automobiles by local dealers from the manufacturer. Plaintiff's relation to the cars in suit is thus explained by the witness R. L. Lewis, in substance: The cars were primarily sold by the Studebaker Corporation to the Holcomb Motor Company as cash transactions. But to that end the purchaser was compelled to borrow 80 per cent. of the purchase price, 20 per cent. being paid in cash, and the transaction was handled as follows: The Studebaker Corporation shipped the cars on bill of lading to its own order, at Birmingham, with the instruction indorsed thereon, "Notify Holcomb Motor Company at Birmingham."

This bill of lading was then indorsed in blank by the Studebaker Corporation, and delivered to the Industrial Finance Corporation. To it was then attached a draft drawn by the latter on Holcomb Motor Company for 80 per cent. of the invoice price, payable on or before 180 days after date of acceptance. Appended to this draft was a "trust receipt" in words as follows:

---

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Trust Receipt.

"Received of Birmingham Trust & Savings Co., Bank of Birmingham, Ala., for Industrial Finance Corporation, on behalf of holder of acceptance of even number herewith, which has this day been accepted by the undersigned.

"Bill of lading covering Studebaker motor vehicle * * *.

"In consideration thereof, it is agreed that the undersigned will hold said property in trust as the property of said Industrial Finance Corporation for the purpose of storing said property in a clean, dry place, free of charge; that the undersigned has not the right to and will not, operate or use said property of the Industrial Finance Corporation for demonstration or other purposes, nor loan, rent, mortgage, pledge, encumber, sell or deliver said property except as authorized herein; that the undersigned may sell said property for the account of the Industrial Finance Corporation, or holder of said acceptance for cash or current funds approved by Industrial Finance Corporation in amount not less than the sum then due on said acceptance, including interest; that the undersigned upon demand prior to such sale, will return said property unused and in good condition to the order of the Industrial Finance Corporation; that in the event said property shall be sold as provided herein, the undersigned will hold the proceeds thereof in trust and separate from his (its, their) funds and will forthwith account for and pay over said proceeds or sufficient thereof to satisfy said acceptance with interest, to the Industrial Finance Corporation for the holder of said acceptance. It is understood that nothing herein shall prevent the undersigned at the time he first takes possession of said vehicle from driving it direct from the warehouse factory or railroad station to his place of business but at his own risk, (except in case of theft or fire) in the event of loss or damage to said car or to other property or to persons. [Signed] Holcomb Motor Company [Seal] Drawee, Dealer, by Leon Jones, Manager, Officer or Firm Member. Witness: [Signed] J. D. Hurd.

"Note.—That no one has any authority to vary the terms of this trust receipt."

These papers were then sent to the Birmingham Trust & Savings Company, and thereupon Holcomb Motor Company called at said bank, paid the 20 per cent. in cash, executed the acceptance of the draft, and also the trust receipt, and received the bill of lading for the car. The bank then delivered to the Industrial Finance Corporation the acceptance and the appended trust receipt. The Studebaker Corporation drew on the Industrial Finance Corporation for 80 per cent. due in on the invoice, after receiving the 20 per cent. paid by the dealer in cash. This draft was paid, and the transaction was complete.

The witness Lewis testified that he was cashier for the Studebaker Corporation at Atlanta, and also represented the Industrial Finance Corporation as its agent in drawing and handling the dealer's acceptances. He further testified:

"During this period Holcomb sold Studebaker cars sent to him in the course of business, like these were, without making any report as to cash he had gotten, but he did report the weekly sales; but did not report as to whether he sold them on credit or not. He would report he sold a car to such and such a fellow, Jones, or some one else, but did not tell whether the fellow paid $1 or $2 or $1,000. He did not report to us whether he sold it for cash or on time; he only reported to the Industrial Finance Corporation every week for every acceptance. All the Industrial Finance Corporation was interested in was to get the amount of the acceptance paid; he promised to pay for the car when they sold it. I let him sell that way, the Industrial Finance Corporation did, without question. That was all the check we had on him to get the money. When the acceptance fell due, our representative with the Industrial Finance Corporation representative would check his stock to see what he had left. That was in the course of business I had been talking about; the course of business was to pay before the acceptance fell due, if he sold a car; that is, as long as the acceptance was paid, it wasn't anything to the Industrial Finance Corporation to whom he sold; they would not pass on the credit of the man he sold to. That is all the interest they had in it. When the particular car was sold, the acceptance became due immediately. That is what it says here, and in the ordinary course of business when a car is sold, according to the terms of the acceptance is immediately due. That is the way I construe it, and that is what it says. I got that from the paper."

This witness also stated:

"Mr. Holcomb, I understand, sold all the cars which have not been paid for yet. * * * Mr. Holcomb never reported to the Atlanta office he had sold those cars."

Plaintiff offered in evidence the several acceptances and trust receipts applicable to the several cars sued for, in connection with the foregoing evidence. Defendant objected to their introduction on numerous grounds, and the trial court sustained the objections, and excluded the papers on the ground that they do not tend to show legal title in the plaintiff.

It was then agreed by counsel, for evidence, that on March 3, 1923, the day before this suit was filed, plaintiff served a written demand on Holcomb Motor Company for possession of each of the cars sued for.

The trial judge thereupon gave for defendant the general affirmative charge, on request, and there were verdict and judgment for defendant. Plaintiff appeals.

Rudulph & Smith and Cabaniss, Johnston, Cocke & Cabaniss, all of Birmingham, for appellant.

Under the trust receipts, as well as the surrounding circumstances, plaintiff had and retained the legal title to the motor vehicles, and for which it can recover in detinue. These trust receipts were admissible in evidence. Thomas v. Montgomery Ward & Co., 211 Ala. 98, 99 So. 786; Smith & Fay v. Mont-

gomery Ward & Co., 209 Ala. 317, 96 So. 231; Columbia Law Review, vol. XXII, Nos. 5 and 6 (May and June, 1922); Mechanics' & Traders' Bank v. F. & M. Bank, 60 N. Y. 40; Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; New Haven Wire Co. Cases, 57 Conn. 352, 18 A. 266, 5 L. R. A. 300; Moors v. Drury, 186 Mass. 424, 71 N. E. 810; Moors v. Wyman, 146 Mass. 60, 15 N. E. 104; Brown Bros. Co. v. Billington, 163 Pa. 78, 29 A. 904, 43 Am. St. Rep. 780; Dows v. National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214; In re Cattus (C. C. A.) 183 F. 733; Century Throwing Co. v. Muller (C. C. A.) 197 F. 252; In re Dunlap Carpet Co. (D. C.) 206 F. 726; In re Richheimer (C. C. A.) 221 F. 16; In re Fountain (C. C. A.) 282 F. 816, 25 A. L. R. 319; In re Ford-Rennie Leather Co. (D. C.) 2 F.(2d) 750; Commercial Credit Co. v. Peak, 195 Cal. 27, 231 P. 340; General Motors Acceptance Corp. v. Hupfer, 113 Neb. 228, 202 N. W. 627; 11 Corpus Juris, 418. Delivery to plaintiff of the bill of lading indorsed by the Studebaker Corporation, for the purpose of being attached by plaintiff to the trust receipt, and payment of the draft drawn on plaintiff by the Studebaker Corporation, vested the title of the Studebaker Corporation to the motor vehicles in plaintiff. Farmers' Exchange Bank v. Greil Bros. Co., 17 Ala. App. 287, 84 So. 427; Ex parte Greil Bros. Co., 203 Ala. 698, 84 So. 924; Cox v. Greil Bros. Co., 208 Ala. 250, 94 So. 292; Cosmos Cotton Co. v. First Nat'l. Bank, 171 Ala. 392, 54 So. 621, 32 L. R. A. (N. S.) 1173, Ann. Cas. 1913B, 42; Third Nat. Bank v. Hays, 119 Tenn. 729, 108 S. W. 1060, 14 Ann. Cas. 1049; Williston "Progress of the Law," 34 Harvard Law Review, p. 759; E. T. Gray & Sons v. Satuloff Bros., 213 Ala. 526, 105 So. 666; Armstrong v. Wilcox, 207 Ala. 390, 92 So. 645; L. & N. v. Sarris, 209 Ala. 217, 95 So. 903; Howell v. Home Nat. Bank, 195 Ala. 73, 70 So. 686. The question of demand does not concern this claimant. White v. Sheffield Co., 90 Ala. 253, 7 So. 910. No particular form of words is necessary to the creation of a legal chattel mortgage—it only need appear that the relation of debtor and creditor was created and that the security for the debt was intended. Mervine v. White, 50 Ala. 388; Glover v. McGilvray, 63 Ala. 508; Hamilton v. Maas & Bro., 77 Ala. 283; Dowdell v. Empire Fur. Co., 84 Ala. 316, 4 So. 31; Dothan Guano Co. v. Ward, 132 Ala. 380, 31 So. 748; Ward v. Ward, 108 Ala. 278, 19 So. 354; Sharpe v. Brantley, 123 Ala. 105, 26 So. 289; Henry v. Brown, 143 Ala. 446, 39 So. 325; Abne v. Abney, 182 Ala. 213, 62 So. 64; 11 C. J. 452, 455.

Percy, Benners & Burr, of Birmingham, for appellee.

Without reference to its character, the trust receipt was properly excluded from evidence, and the affirmative charge was properly given for appellee. The cars were in the lawful possession of Holcomb, being placed in his possession with the right to sell as he saw fit.

Appellant, to have recovered in detinue, must have had the entire legal title to the property sued for; mere indebtedness or an equitable lien was not sufficient. Butler-Kyser Mfg. Co. v. C. of G. R. Co., 190 Ala. 646, 67 So. 393; Jackson, Morris & Co. v. Rutherford, 73 Ala. 156; Beck v. Crow, 204 Ala. 295, 85 So. 489; Hodges v. Westmoreland, 209 Ala. 498, 96 So. 573; Beverly v. Rhodes, 209 Ala. 300, 96 So. 205.

SOMERVILLE, J. [1, 2] On the trial in the court below the burden was on the plaintiff to show that at the time the suit was instituted it owned either a general or a special interest in the property sued for, coupled with an unqualified right to its immediate possession. Minge v. Clark, 193 Ala. 447, 452, 69 So. 421, and cases cited therein; Boulden v. Estey Organ Co., 92 Ala. 182, 9 So. 283; Henderson v. Felts, Admr., 58 Ala. 590, 593. Proof of a general legal title, of course, implies a right to possession; but proof of an equitable title, without supplemental proof of an accompanying right to possession, would not support a recovery in detinue.

[3, 4] The authorities are clear to the proposition that, when the owner of goods ships them on a bill of lading consigned to his own order, the legal intendment is that the legal title to the goods is retained in the owner until the bill of lading is delivered to the purchaser. Howell v. Home National Bank, 195 Ala. 73, 70 So. 686; McCormick v. Joseph, 77 Ala. 236. And when the bill of lading thus drawn is indorsed in blank by the owner, and delivered to another, the legal intendment, prima facie, is that the legal title passes to such transferee. Cosmos Cotton Co. v. First Nat. Bank of Birmingham, 171 Ala. 392, 395, 54 So. 621, 32 L. R. A. (N. S.) 1173, Ann. Cas. 1913B, 42; Am. Nat. Bank v. Henderson, 123 Ala. 612, 26 So. 498, 82 Am. St. Rep. 147. This presumption acquires conclusive force where such transferee has paid, or undertaken to pay, on behalf of a third person, the purchase price, or a part of it, due to the owner-shipper, and the intention is to protect the transferee as to such payment by giving to him, intermediately, the control of the goods. Tishomingo Sav. Inst. v. Johnson, 146 Ala. 691, 40 So. 503 (Mem.).

On these principles it is clear that the delivery of the bills of lading, indorsed by the Studebaker Corporation as seller consignee, to the Industrial Finance Corporation at Birmingham, vested in the latter the legal title to the motor cars represented by the several bills of lading, with the incidental right of possession, and also the jus disponendi, qualified, of course, by the right of the dealer, Holcomb Motor Company, to acquire a special title and possession, qualified and restricted by its contract with the Industrial Finance

Corporation, through whose financial aid the cars were secured and handled.

[5] Without such restrictive contract, the delivery of the bills of lading by the Finance Corporation to the dealer, under the circumstances shown, would have passed the title, possession, and jus disponendi to the dealer. And, in order to rebut that conclusion, plaintiff, the Finance Corporation, offered in evidence the acceptances signed by Holcomb Motor Company, along with the "trust receipts" contemporaneously executed by that company; the two constituting, with the cash payment of 20 per cent. of the invoice price, and the delivery of the bills of lading, a single transaction.

The trial court excluded the acceptances and trust receipts on the ground that they did not tend to show legal title in the plaintiff, and this ruling presents for review the question of decisive importance in the case.

The real question is, not whether the trust receipts created and vested a legal title in plaintiff, but whether they show that, notwithstanding the delivery of the bills of lading, and of the cars themselves, to Holcomb Motor Company, plaintiff nevertheless retained its previously acquired title to the several cars as security for the amount of the purchase money advanced by it upon each.

It should be noted here that, if the detinue issue were between plaintiff and Holcomb Motor Company, it would be immaterial whether the title of plaintiff, or of defendant, were legal or equitable merely, because the right of possession, as between the parties, is fixed by the contractual stipulation of the trust receipt, viz. that plaintiff is entitled to possession upon demand made upon Holcomb Motor Company before the sale of the car or cars demanded. Obviously there could be no unlawful detention until such a demand had been made and refused. So also detinue could not be maintained against a purchaser in due course of trade from Holcomb Motor Company, unless the purchase were made after such demand and with notice thereof.

Conceding, of course without pretending to decide, that a court of equity would, upon a comprehensive view of the entire transaction in all of its phases, treat Holcomb Motor Company as the owner of the cars, and the Finance Corporation as a lienholder for security and reimbursement merely, we must, in a court of law, define and enforce the rights of the parties according to the terms of their agreement.

We have given very careful consideration to the terms of the trust receipts in the light of the circumstances under which they were given, and we are convinced that the intention of the parties, deducible from the language employed, was to preserve in the Finance Corporation the legal title previously acquired by it as transferee of the bills of lading, with an unqualified right to reposses-

sion of each car, on demand, until the acceptance applicable to that car was fully paid, with an equity in Holcomb Motor Company to pay the amount of the acceptance at any time and acquire a perfect title to the car, and the further right to sell each car in due course of trade, before such payment, for not less than the amount of the acceptance, and the duty to hold such amount in trust for the Finance Corporation, and pay it over to it seasonably.

The stipulation on the dealer's part to "hold said property in trust as the property of said Industrial Finance Corporation," cannot in reason mean that it was to be taken over and held as the property of the dealer, for that would be a complete contradiction of the language of the stipulation; and everything else in the trust receipt is in harmony with the theory of title retained in the Finance Corporation. Certainly there is nothing in the writing which can effect a divestiture of the legal title previously acquired, and then held, by the latter.

Our conclusion above stated, based on the particular form and circumstances of the transaction here in question, renders unnecessary a review of the numerous authorities cited in brief of counsel for appellant upon the general subject of "trust receipts," and the legal or equitable relationships resulting therefrom. As shown by the comprehensive and scholarly article of Mr. Karl T. Frederick in the Columbia Law Review, vol. 22 (May and June, 1922), on "The Trust Receipt as Security," there has been much diversity of judicial opinion as to the effect of such contracts on the legal title to the property involved, due in part to the variant terms of the instrument and the previous locus of the legal title, as in Scandinavian American Bank v. Sabin, 227 F. 579, 582, 142 C. C. A. 211.

For future reference we note the following pertinent cases: Mechanics' & Traders' Bank v. F. & M. Bank, 60 N. Y. 40; Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; New Haven Wire Co. Cases, 57 Conn. 352, 18 A. 266, 5 L. R. A. 300; Moors v. Drury, 186 Mass. 424, 71 N. E. 810; Moors v. Wyman, 146 Mass. 60, 15 N. E. 104; Brown Bros. Co. v. Billington, 163 Pa. 78, 29 A. 904, 43 Am. St. Rep. 780; Dows v. Nat. Exch. Bank, 91 U. S. 618, 23 L. Ed. 214; In re Cattus (C. C. A.) 183 F. 733; Century Throwing Co. v. Mueller (C. C. A.) 197 F. 252; In re Dunlap Carpet Co. (D. C.) 206 F. 726; In re Richheimer (C. C. A.) 221 F. 16; In re Fountain (C. C. A.) 282 F. 816, 25 A. L. R. 319; Commercial Credit Co. v. Peak, 195 Cal. 27, 231 P. 340; Gen. Motors Acceptance Corp. v. Hupfer, 113 Neb. 228, 202 N. W. 627.

In 11 Corp. Jur. 418, § 23, the author makes this simple, and we think correct, statement of the law:

"Arrangements are more or less frequent in modern business relations, by which a bank, ad-

vancing money to enable a customer to purchase goods, takes the bill of lading for such goods in its own name and thereafter surrenders possession to its customer, under an agreement that the title to the goods shall remain in the bank, and that the proceeds of sale shall be applied to the repayment of the advances made by the bank on account of the original purchase price. While transactions of this nature are similar in effect, they vary considerably in form. Title to the property passes from the original seller to the bank, and the transaction, as to the customer of the bank, amounts to a reservation of the title for the purpose of security, although there is some variance as to its exact nature."

Substituting the Finance Corporation for the bank, this statement of the law is applicable to the contract in this case, which unquestionably bears the legal form of a conditional sale, with the equitable spirit and purpose of a security mortgage. See Ex parte State (State v. White Fur. Co.), 206 Ala. 575, 90 So. 896; s. c. 18 Ala. App. 249, 90 So. 895; Thornton v. Cook, 97 Ala. 630, 634, 12 So. 403; Dowdell v. Empire Fur. & Lumber Co., 84 Ala. 316, 4 So. 31; 6 Corp. Jur. 1099.

Our conclusion is that, under either view, the acceptances and trust receipts were admissible in evidence to show a legal title in plaintiff, and that they were erroneously excluded, to his prejudice, since, with these documents in evidence, a prima facie case for recovery was made out. The evidence tended to show, it is true, that the dealer had sold the cars, but not that such sales had been made before plaintiff's demand for their possession; and, in any event, that would be a question between plaintiff and the dealer in the original suit, and cannot arise in this branch of the suit against the claimant, unless the latter shows title by purchase from the dealer. White v. Sheffield Co., 90 Ala. 253, 7 So. 910.

The judgment will be reversed and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.