Rhode Island Hospital Trust Co. *vs.* Devonshire
Financial Service Corporation *et al.*

JUNE 30, 1933.

Present:   Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

Hahn, J.   This action of the case in trover and conversion for the value of three automobiles was originally brought in the Superior Court and has been certified to this court on an agreed statement of facts to be heard and determined under the provisions of Section 4, Chapter 348, General Laws 1923.

As the agreed statement of facts is of great length, so much thereof as is necessary in explaining and determining the issues involved is summarized as follows:   The Rhode Island Hospital Trust Company, hereinafter called the trust company, had an agreement to make loans from time to time to a corporation entitled Downey-Nash, Inc. upon the

security of bills of lading covering motor cars being shipped by the Nash New England Company to Downey-Nash under negotiable bills of lading to the order of the trust company or the shipper indorsed in blank and forwarded directly to the trust company with a draft on Downey-Nash attached thereto. The trust company, upon deposit with it of the demand note of Downey-Nash as evidence of the indebtedness arising on payment of the draft, would pay the draft and retain title to the bill of lading and the cars represented thereby until it should be reimbursed by Downey-Nash for the amount of the draft, title to the cars thus passing from the shipper to the trust company and thence, after payment by Downey-Nash of the sum advanced by said trust company, to Downey-Nash. The trust company further agreed that, upon request from Downey-Nash, to facilitate the unloading and storage of any cars delivered, it would entrust the bill of lading to Downey-Nash upon a trust receipt stating said purpose; in return Downey-Nash agreed to place said cars in a storehouse and substitute at once a non-negotiable warehouse receipt in the trust company's name, or the equivalent sum in cash.

The three automobiles, the title to which is the basis of the present proceedings, were shipped under a negotiable bill of lading to the order of Nash New England Co. of Boston, indorsed by it in blank and by it forwarded direct to the trust company, attached to a draft for $3,057.30. While this bill of lading was in the possession of the trust company and while the automobiles were still in the custody of the railroad company, Downey-Nash executed and delivered to the National Shawmut Bank, one of the defendants herein, a chattel mortgage, in which were inserted the model numbers of the said three automobiles, and obtained a loan upon its promissory note secured by said mortgage.

After the execution and delivery of the mortgage and the making of the loan, the trust company, acting in accordance with its agreement with Downey-Nash, paid the $3,057.30 draft, received the note of Downey-Nash in like amount and

delivered the bill of lading for the three automobiles to an agent of Downey-Nash under a trust receipt reading as follows:

"October 6, 1930.

Received from Rhode Island Hospital Trust Company Bill of Lading representing 3 Nash cars marked ———— in trust, for the purpose of transferring said autos to warehouse.

We hereby agree with said Trust Company to make substitution, without delay, of Warehouse Receipt or of its equivalent in cash for said Bill of Lading.

Downey-Nash, Inc.

R. J. Downey, Treas."

The bill of lading did not include any description by numbers or otherwise to enable the trust company to identify the automobiles and record their numbers in the trust receipt. Through an error on the part of an agent of Downey-Nash in confusing two shipments of automobiles, the numbers given the trust company for insertion in the trust receipt were incorrect, being those of three other automobiles, described as "Carload A", shipped from Boston at the same time under a separate bill of lading and draft, which was paid by Downey-Nash (the title of these other automobiles not being involved in the present proceedings).

Upon discovery of the mistake the agent immediately secured from the Downey-Nash office a new check, for $3,149.70, which was substituted for the check of $3,057.30. At the same time said agent informed the trust company by a written notation of the correct numbers to be inserted in the trust receipt. The transaction conformed to the intent of the parties and correctly stated the numbers of the three automobiles for which the draft was given, and although this alteration was not physically made, the correct

numbers were filed with the trust receipt and the $3,057.30 check was returned to Downey-Nash for cancellation.

Downey-Nash, after securing the bill of lading for said automobiles, violated the terms of the trust receipt and of its agreement with the trust company in that, after unloading these automobiles from the railroad cars, instead of storing them at the warehouse agreed upon, it placed them in its own salesroom where they remained until October 15, when the parties hereto became aware of the circumstances.

The questions involved are not complicated. They may be divided into two propositions, one of law—as to the legal title to the automobiles—and one of mixed law and fact, namely: If the legal title was in the trust company, did it by any act or omission preclude itself from asserting this title against the defendants?

On the matter of title, there is no question but that ordinarily the indorsee and holder of a bill of lading acquires title to the property therein described. G. L. 1923, Chap. 319, Secs. 1, 5. Section 1 provides that: "A negotiable bill may be negotiated by delivery where, by the terms of the bill, the carrier undertakes to deliver the goods to the order of a specified person, and such person . . . has indorsed it in blank." Section 5 provides that: "A person to whom a negotiable bill has been duly negotiated acquires thereby: (a) Such title to the goods as the person negotiating the bill to him had . . . ."

The defendants contend that the chattel mortgagee should be given priority over the title of the trust company because, by surrendering the bill of lading on a trust receipt to a corporation that it knew was engaged in selling automobiles, the trust company should reasonably have anticipated that the dealer might violate the terms of the trust receipt, and is therefore estopped to deny the rights of the defendants under the chattel mortgage given by the dealer.

While one having the legal title to a chattel may so act as to estop himself from setting up such title against an innocent purchaser, who through the act or neglect of the

owner is led reasonably to believe that the title is in another clothed with apparent authority to give good title, there is nothing in the present case to place the defendants in such a position.

Trust receipts similar to that involved in the instant case have been held by courts to be a proper method of arranging for the storage of chattels by the owner and do not deprive the owner of his title thereto. The fact that the party giving the trust receipt is the one who may ultimately purchase the chattels does not modify the applicability of this rule. 49 A. L. R. 282; *In re James, Inc.*, 30 Fed. (2d) 555; *In re Otto-Johnson Mercantile Co.*, 52 Fed. (2d) 678; *Charavay & Bodvin* v. *York Silk Mfg. Co.*, 170 Fed. 819; *Ind. Finance Corp.* v. *Turner*, 215 Ala. 460; *Gen. Motors Acceptance Corp.* v. *Hupfer*, 113 Neb. 228; *Holcomb & Hoke Mfg. Co.* v. *Dodge Co.*, 123 Neb. 142.

On the question of estoppel so strongly urged by defendants as a reason for giving their chattel mortgage priority over the trust company's claim of title, they have not shown that they made any investigation as to the title of the automobiles upon which they took the chattel mortgage. These automobiles were not in a store or place of business. The Downey-Nash company were in possession of no papers indicating title in themselves at the time the loan was made. Defendants cite the rule laid down in *McCusker* v. *McEvey*, 9 R. I. 528, that an after-acquired title of a grantor inures to the benefit of a grantee. They do not bring the instant case within this rule because their grantor had not title at the time of the execution of the mortgage or thereafter, which fact might have been very easily ascertained by a request upon Downey-Nash for some evidence of title.

As Downey-Nash, Inc., never had title to the automobiles in question and as the title thereto was in the plaintiff trust company, the defendants are guilty of conversion of the automobiles and our decision is for the plaintiff for the amount of its claim, namely, $3,057.30 with interest from October 15, 1930.

448

The papers in the case, with our decision certified thereon, are ordered sent back to the Superior Court for the entry of final judgment on the decision.

*Tillinghast & Collins, Harold E. Staples*, for plaintiff.

*Gardner, Moss & Haslam, William W. Moss, Harry A. Tuell*, for defendant.