## OIL CITY MOTOR CO. v. C. I. T. CORPORATION.

### No. 1151.

Circuit Court of Appeals, Tenth Circuit.

April 1, 1935.

J. H. Maxey, of Tulsa, Okl. (N. A. Gibson and Wilbur J. Holleman, both of Tulsa, Okl., on the brief), for appellant.

H. F. Birnbaum, of New York City, and Villard Martin, of Tulsa, Okl. (Geo. S. Ramsey and Garrett Logan, both of Tulsa, Okl., and Phillip W. Haberman, of New York City, on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This is an action to recover for alleged usurious interest exacted and paid. Plaintiff was a dealer in DeSoto and Plymouth automobiles at Tulsa, Okl. It purchased new automobiles from the manufacturer in Detroit, Mich., at wholesale for cash and sold them at retail in Tulsa and adjacent trade territory. It was obligated by contract to purchase 300 DeSoto and 200 Plymouth automobiles during the year 1932. Most of its sales at retail were made for part cash, part deferred payments, and a used automobile taken in trade. That method of purchase and sale necessitated more cash than plaintiff had available and required it to borrow substantial sums from time to time. Defendant was engaged in the business of financing dealers in automobiles and maintained a branch office at Tulsa. The parties entered into two contracts in writing dated March 17, 1932. The first, denominated "Application for Floor Plan" signed by plaintiff and accepted by defendant, contained the following provisions:

"We hereby make application for privilege of storing cars under C. I. T. Floor

Plan. For that purpose, we hereby request you to open for us an unconfirmed revocable credit for the maximum sum at any one time of $15,000.00 or such other sum as you may determine in favor of the manufacturer and/or distributor (direct dealer) of motor vehicles handled by us, to be availed of by notifying you of drafts drawn on us for the cost of such motor vehicles which drafts you shall pay, or by notifying you of direct deliveries we may desire to have made to us and covered by invoices to you which you shall pay, and/or by utilizing any other plan which you may designate. Bills of lading to be made out to order or to your order. Insurance against loss by fire or theft to be taken out and paid for by you.

"In consideration of your opening the above credit and of any extensions thereunder we hereby recognize, admit and guarantee your ownership of the merchandise or the proceeds thereof represented by the bills of lading or invoices aforesaid and of your right of disposal and possession of said merchandise and proceeds and of the bills of lading covering the same until such time as any and all indebtedness and liability existing in your favor as against us under said credit or otherwise shall have been paid, discharged and fulfilled. * * *

"In consideration of the above credit being extended to us, we hereby agree to use the C. I. T. retail plan exclusively on all of our retail deferred payment sales. * * *"

The other, called "C. I. T. Retail Plan," required plaintiff to submit to defendant for purchase at less than their face value all notes and conditional sales contracts taken for the sale of new or used automobiles on terms. At the time the contracts were executed, defendant furnished plaintiff forms of sight drafts, trust receipts, and all other blanks necessary to operate under the agreements. In making each subsequent order from the manufacturer, plaintiff wrote a letter requesting shipment of a stated number of specified automobiles and inclosed therewith a signed draft and trust receipt in favor of defendant, but otherwise in blank. When the order reached Detroit in that form, defendant paid or assumed payment of the purchase price of the automobiles; the manufacturer thereupon delivered the draft and trust receipt to defendant and either shipped the automobiles to plaintiff or delivered them to a transport company for transportation to Tulsa; plaintiff paid

the transportation charges in either event. Defendant then sent the draft and trust receipt to its branch manager at Tulsa. By mutual action of the parties there the draft was filled out for 90 per cent. of the purchase price of the automobiles and made payable ninety days after date; plaintiff then paid defendant the remaining 10 per cent. by check and the trust receipt was completed in like manner by inserting a description of the automobiles. The automobiles thus acquired were placed in plaintiff's salesroom for display and sale.

Defendant advanced $110,127 for the acquisition of automobiles from the manufacturer. Plaintiff paid defendant $2,478.19 for the money advanced and received rebates in the sum of $1,599.76 occasioned by payment of drafts before maturity. The sum thus charged equals in amount interest on the money advanced computed at the rate of 9 per cent. per annum. The written agreement was silent with respect to interest, but according to the testimony the parties agreed verbally that it should be paid at the rate of 9 per cent. per annum. Plaintiff sold defendant notes secured by conditional sales contracts on automobiles sold to its customers in the aggregate face value of $194,126 for which defendant paid $160,389.75. Charges against the differential in the sum of $14,619.55 were conceded in substance and amount. The remainder of the differential amounts to $19,116.70.

Alleging that the two contracts were parts of one agreement for the loan of money; that as a condition to the making of such loan defendant required plaintiff to sell the notes and sales contracts at less than their fair value; that the sum of $110,127 was lent under such agreement; that the sum charged as interest and the net differential of $19,116.70 were both in fact interest exacted and paid, and that the two amounted to interest at the rate of 20.8 per cent., judgment was sought for twice the sum paid. At the conclusion of plaintiff's case in chief, the court below directed a verdict for defendant and rendered judgment accordingly. Complaint is made of that action.

■ The penalty for exacting and receiving usurious interest is a creature of state statute. The maximum rate which may be provided by contract in Oklahoma is 10 per cent. per annum. Section 9518, O. S. 1931. And the penalty for charging and receiving interest above that rate is for-

feiture of twice the sum paid to be recovered in an action for debt or by way of set-off in a suit upon the obligation out of which the usury grew. Section 9519, Id. Plaintiff asserts that as a condition to the making of the loan, defendant required it to sell the notes and sales contracts at substantially less than their fair value; that the sum called interest was computed, charged, and paid at the rate of 9 per cent.; that the item of $19,116.70, ostensibly the net discount upon the sale of such notes and contracts, was likewise interest; and that the two combined constitute usury. The familiar doctrine is invoked that if as a condition to the making of a loan at an apparently permissible rate of interest, the lender requires the borrower to sell property to him at less than its value or to purchase property from him at an excessive price, the difference represents interest and will be taken into account in determining whether the transaction is usurious. That principle is firmly rooted and we are in accord with it, but the question for determination here is whether the method through which the defendant advanced the $110,127 for the purchase of automobiles was one for the loan of money. If not, plaintiff is met by an insuperable obstacle because the function of usury statutes is to prevent excessive interest upon borrowed money. They apply exclusively to a transaction involving the loan of money, and in the absence of a loan there cannot be usury. General Motors Accept. Corp. v. Mid-West Chevrolet Co. (C. C. A.) 66 F.(2d) 1.

The method pursued after defendant entered the picture was that defendant paid the purchase price of the cars in Detroit and the manufacturer shipped or caused them to be transported to plaintiff. Plaintiff then reimbursed defendant for 10 per cent. of that amount, gave its ninety-day accepted draft for the remainder and a trust receipt in the usual tenor in which it was expressly stated that plaintiff had received the automobiles from defendant and would return them in good condition on demand, also that defendant had the right to cancel the trust at any time and repossess itself of the property or the proceeds. The situation was the same in effect as though the manufacturer shipped the automobiles with bill of lading attached to a sight draft drawn upon defendant and paid by it upon plaintiff executing and delivering the accepted draft and trust receipt. Title to the automobiles vested in defendant with possession in plaintiff as trustee. The relation of bailor and bailee existed between them. Plaintiff had the privilege of acquiring title by making payment of the purchase price, but until that was done it held the property in trust. In re James Inc. (C. C. A.) 30 F.(2d) 555; In re Bell Motor Co. (C. C. A.) 45 F.(2d) 19; In re Otto-Johnson Merc. Co. (D. C.) 52 F.(2d) 678; General Motors Accept. Corp. v. Hupfer, 113 Neb. 228, 202 N. W. 627; Holcombe & Hoke Mfg. Co. v. N. P. Dodge Co., 123 Neb. 142, 242 N. W. 367; Industrial Finance Corp. v. Turner, 215 Ala. 460, 110 So. 904; General Motors Accept. Corp. v. Dunn Motors Inc., 172 Ga. 400, 157 S. E. 627; Id., 43 Ga. App. 275, 158 S. E. 626; Rhode Island Hospital Tr. Co. v. Devonshire F. S. Corp., 53 R. I. 443, 167 A. 134, 135; Commercial Credit Co. v. Peak, 195 Cal. 27, 231 P. 340; Monjo v. French, 163 Pa. 107, 29 A. 907.

Instead of making a loan of money, defendant lent or extended its credit which plaintiff used in the operation of its retail business. A return demanded and received for a bona fide loan or extension of credit as distinguished from a loan of money does not taint the transaction with usury regardless of the amount. One may sell his credit for any obtainable price if the transaction is in good faith and not a mere cloak, artifice, or device to conceal usury. Ryttenberg v. Schefer (D. C.) 131 F. 313; Title Guaranty & Surety Co. v. Klein (C. C. A.) 178 F. 689, 29 L. R. A. (N. S.) 620; Philadelphia Warehouse Co. v. Seeman (C. C. A.) 7 F.(2d) 999; Seeman v. Philadelphia Warehouse Co., 274 U. S. 403, 47 S. Ct. 626, 71 L. Ed. 1123; Equitable Trust Co. v. A. C. White Lumber Co. (D. C.) 41 F.(2d) 60; Guaranty Trust Co. v. Grand Rapids, G. H. & M. Ry. Co. (D. C.) 7 F. Supp. 511. As the transactions between these parties did not involve the loan of money, there was no usury. We conclude that the court was right in directing a verdict for defendant and, therefore, the judgment is affirmed.