264 F.2d 282
 MEMORIAL GARDENS OF THE WASATCH, INC., a corporation, Appellant,
v.
EVERETT VINSON AND ASSOCIATES, John A. Pace, Blaine V. Glasmann, Jr., and Paul Thatcher, Appellees.
In the Matter of Memorial Gardens of the Wasatch, Inc., a corporation, Debtor.
 No. 5903.
 United States Court of Appeals Tenth Circuit.
 February 19, 1959.
 
 Warwick C. Lamoreaux, Salt Lake City, Utah (Jess B. Hawley, Jr., Boise, Idaho, was with him on the brief), for appellant.
 Donald C. McKinlay, Denver, Colo. (Holme, Roberts, More & Owen, Denver, Colo., and Paul Thatcher, Ogden, Utah, were with him on the brief), for appellees.
 Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.
 HUXMAN, Circuit Judge.
 
 
 1
 This appeal challenges the correctness of the judgment of the trial court dismissing a reorganization proceeding instituted by the debtor corporation, Memorial Gardens of the Wasatch, Inc. (herein called the corporation) under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The petition for reorganization was filed by D. J. Dhority as president of the corporation. An order approving the filing of the petition was entered. Thereafter, Everett Vinson and Associates, a limited partnership of Illinois, a creditor (herein called Associates), and John A. Pace, as president and director, Blaine B. Glasmann, Jr., as director and vice-president, and Paul Thatcher, as director and secretary of the corporation, moved that the order approving the filing of the petition be vacated and the petition for reorganization be dismissed. After a full hearing, the motion was sustained and the judgment appealed from was entered. The decision turns on who are the lawful officers of the corporation, D. J. Dhority or the appellees, Pace, Glasmann, and Thatcher? To understand what is involved, a detailed statement of fact of the transactions between Dhority and Associates resulting in the formation of the appellant corporation is necessary.
 
 
 2
 Dhority was the owner and operator of five or six cemeteries in Colorado and Utah. Everett Vinson and Associates is a limited partnership with its place of business in Chicago, Illinois. Joseph C. Kennedy, attorney, and A. H. Doty, a certified public accountant, are general partners thereof. Among other activities, Associates were engaged in promoting and assisting in the development of cemeteries. They were engaged in such a project in Memphis, Tennessee.
 
 
 3
 Through a Mr. Rush, Dhority and Associates were brought together with a view, first, of developing a new cemetery in California, but this project fell through. Many conversations were had between the parties which are not necessary to detail because their oral understandings were subsequently reduced to a written contract. In general, it was agreed that Dhority would form a new corporation and that Associates would acquire and sell to the corporation a tract of land to be developed as a cemetery.
 
 
 4
 On January 10, 1955, a preliminary written agreement was executed embodying in general the principal terms of the oral agreement. It recited the agreement for the formation of a new corporation, the purchase of a forty-acre tract by Associates which was to be sold to the corporation, and the general terms to be included in a permanent contract relating to the plotting of the tract, the price at which the crypts were to be sold, the price to be paid by the corporation to Associates for the land, and matters of that nature. On or about July 10, 1955, at Chicago, Illinois, the formal contract was executed. It was dated back to February 15, 1955. It is a detailed contract consisting of sixteen pages in the record; it contains twenty-five sections with many subsections reciting in minute detail the obligations of the parties to each other. It supersedes all prior agreements and constitutes the sole agreement between the parties.
 
 
 5
 The essential provisions of the contract may be summarized as follows. Associates agreed to sell the corporation forty acres of ground (properly described) and the corporation agreed to purchase the same. The contract set out the terms and conditions under which Associates should convey to the corporation legal title to various parcels of the tract from time to time. The whole tract was to be plotted into not less than 35,000 crypts. Crypts, with exceptions not material, should be sold for not less than $482. It was agreed that the total purchase price of the land should be 38% of the gross sale price of each crypt until 60% of the crypts had been sold. The corporation agreed to sell not less than $300,000 gross sales price of crypts for each of the first five years, $150,000 in each of the next five years, and $100,000 each year thereafter. The contract gave Associates a lien on all of the real estate and on the sale of crypts sold on the installment plan until the sums due it were paid. As additional security, the corporation agreed to deposit all of its capital stock with the LaSalle National Bank of Chicago, as trustee, to guarantee performance of the contract.
 
 
 6
 It was provided that upon default, the escrow agent should, upon written request by Associates, sell the stock to a person financially responsible and exceptionally qualified to manage and operate the cemetery and who should agree to perform all the obligations of the corporation to Associates. As a part of the overall transaction, Associates also agreed to loan Dhority $45,000 for preliminary development expenses.
 
 
 7
 Upon the execution of the principal contract, the stock was assigned as provided in the contract, Associates loaned the corporation $45,000, in return for its note payable in installments, together with interest at 5%. Thereafter, Associates loaned the corporation an additional sum of $1,200 on its promissory note payable as provided for therein, together with interest at 5%.
 
 
 8
 The corporation entered upon the performance of the contract. It organized and carried on a sales campaign. It was never able to sell sufficient crypts to meet its obligations under the contract. These defaults continued, in fact grew worse as time progressed, until on July 11, 1957, Associates demanded of the escrow agent, in writing, that it sell the escrowed stock because of the corporation's default. The sale was held and the stock was sold to John A. Pace as one financially responsible and exceptionally qualified to operate a cemetery. The escrowholder assigned 996 shares of the stock to John A. Pace, one share to Paul Thatcher, and the balance thereof to Blaine B. Glasmann, Jr. Dhority refused the demand of the new stockholders to transfer the stock on the books of the corporation. Thereafter, a stockholders' meeting was held by the purchasers, at which Pace, Glasmann, and Thatcher were elected directors of the corporation. It is in that capacity and as officers of the corporation that they were joined as defendants. Everett Vinson and Associates were joined as creditors.
 
 
 9
 Appellant contends that the principal contract reeks with usury which vitiates the entire transaction and makes void the sale of the escrowed stock to appellees, other than Associates, by the escrowholder. It is their position that the $45,000 loan and the contract were parts of an integrated transaction, and so considered evidenced a loan, and the payments to Associates under the contract are, in fact, interest payments and thus usurious. Appellant's position is that because of the usury the whole transaction is void, and appellees acquired no rights thereunder; that the sale by the escrow agent of all of the stock of the corporation to appellees, other than Associates, was void, and that, therefore, they have no standing as officers of the corporation.
 
 
 10
 The trial court found that the contract was not a subterfuge to cover up the true intent of the parties and that it was not the purpose or intent of the parties that the transaction should, in fact, be one for the loan or forbearance of money; that the contract expressed the true intent of the parties and that the basic nature of the transaction was one for the sale of land to be acquired by Associates for a purchase price to be paid in the future out of the cash receipts of the corporation from the sale of burial rights on the land. Based thereon the court concluded, as a matter of law, that the land agreement was valid and enforceable, and was not void for usury; that Dhority was not an officer of the corporation and was not entitled to maintain the reorganization proceedings.
 
 
 11
 It may be conceded that the loan of $45,000 and the sales contract were integrated parts of a single transaction. Without the sales contract, there would have been no need for a loan, and without the provisions for a loan, the sales contract would not have been executed. But that does not solve the problem. There is no conflict in the authorities as to what constitutes usury. A good statement of the law is found in Oil City Motor Co. v. C. I. T. Corporation, 10 Cir., 76 F.2d 589, 591, 104 A.L.R. 240 where this court approved the general principle of law that,
 
 
 12
 "* * * if as a condition to the making of a loan at an apparently permissible rate of interest, the lender requires the borrower * * to purchase property from him at an excessive price, the difference represents interest and will be taken into account in determining whether the transaction is usurious. That principle is firmly rooted and we are in accord with it, * * *."
 
 
 13
 No further authority need be cited in support of this universally accepted principle.
 
 
 14
 If the parties were negotiating for a loan, and if, in order to obtain it, Dhority was required to execute this contract, there would be usury. The difficulty with appellant's position is that Dhority was not seeking a loan. As far as the record shows, he needed no loan to carry on his business. Neither did Associates approach him with the idea of making him a loan. It seems clear from the record that what the parties had in mind was the acquisition of a tract of ground to be plotted and sold as cemetery burial sites. Dhority had experience in developing and operating cemeteries. Associates had funds to invest in the purchase of cemetery sites, but they had no knowledge, experience or desire to develop or operate a cemetery. Having in mind mutual profit to be realized from such a venture, they entered into the contract in question. Stripped of its verbiage, the essence of the contract is that Associates would buy the land, Dhority would organize the corporation, Associates would then sell the land to the corporation and it would pay therefor 38% of the gross sales price of all lots sold until 60% of the lots had been sold. The loan was incidental to the sale. In fact, there was no firm agreement to borrow or to loan any sum. Dhority was free to arrange for development capital in any way he wished. Associates were required to loan him the money in question only if he needed it for development purposes. We think the record fully sustains the findings of the court as outlined above.
 
 
 15
 From what has been said, it follows that the sale of the stock by the escrowholder was valid. Dhority had no standing as an officer to institute the reorganization proceeding and the court properly dismissed it. The disposition of the principal question makes unnecessary a consideration of the subsidiary questions presented.
 
 
 16
 Affirmed.