[Civ. No. 28871. Second Dist., Div. Four. Feb. 7, 1967.]

WILLIAM L. MONG, Plaintiff and Appellant, v. IRVING I. BASS, as Trustee in Bankruptcy, etc., et al., Defendants and Respondents.

Robert S. Butts and David A. Binder for Plaintiff and Appellant.

C. E. H. McDonnell, Burke Mathes, Griffin & Griffin and Richard T. Griffin for Defendants and Respondents.

FILES, P. J.—Between April 1959 and January 1960 plaintiff was engaged in the business of financing under trust receipts (flooring) used cars held for sale by a corporation which did business under the name of Michell Bros., Inc. Carl H. Michell, Jr., president of the corporation, executed in his individual capacity a continuing guaranty of Michell Bros.' indebtedness to plaintiff. On April 20, 1960, plaintiff brought an action against Michell Bros. and Michell individually alleging two causes of action: The first was for the balance due on account of money advanced on three automobiles which Michell Bros. had sold out of trust without repaying the indebtedness. The other cause was for the deficiency which had resulted after plaintiff had been compelled to repossess and sell at a loss three other cars. Michell Bros. meanwhile had become bankrupt. Irving I. Bass, as trustee in bankruptcy, filed an answer which included 132 counterclaims for treble

damages for interest collected in violation of the Usury Law.[1]

The case was tried to the court sitting without a jury. At the close of the trial defendants conceded that plaintiff was entitled to $1,466 for the cars sold out of trust and $1,037.98 for the deficiency on the three repossessed cars described in the complaint. The court then found that each transaction described in the counterclaim was usurious, and assessed damages for treble the amount of interest paid, totaling $12,412. A judgment was entered in favor of the trustee in bankruptcy and against plaintiff in the net amount of $9,908.02. Plaintiff was denied any recovery against Michell individually.

Plaintiff is appealing from the judgment.

Michell Bros. was primarily a dealer in new cars, about 10 percent of its business being in used cars. The finance company which floored its new cars did not care to lend on used cars. Michell was referred to plaintiff, who was himself a used car dealer as well as a money lender.

At a conference held between Michell and plaintiff in the spring of 1959 the terms of the financing were agreed upon orally. Plaintiff would not advance more than the wholesale blue book price or the market value of a car, upon a trust receipt. For the use of his money plaintiff would charge $25 per car per month or fraction of a month. Plaintiff called this a "documentation charge." At the end of one month a trust receipt could be renewed for an additional month by paying the $25 charge which had been earned and reducing the principal by 10 percent.

Plaintiff testified he explained to Michell that there would

---

[1] Article XX, section 22, of the California Constitution (enacted 1934) provides in part: "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 percent per annum upon any loan or forbearance of any money, goods or things in action."

The Usury Law (Stats. 1919, p. lxxxiii, § 3; Deering's Gen. Laws, 1954, Act 3757, § 3; West's Civ. Code Ann., § 1916-3) provides in part:

"Every person, company, association or corporation, who for any loan or forbearance of money, goods or things in action shall have paid or delivered any greater sum or value than is allowed to be received under the preceding sections, one and two, may either in person or by his or its personal representative, recover in an action at law against the person, company, association or corporation who shall have taken or received the same, or his or its personal representative, treble the amount of the money so paid or value delivered in violation of said sections, providing such action shall be brought within one year after such payment or delivery."

The 1934 amendment to the Constitution operates in practical effect as an amendment of sections 1 and 2 of the Usury Law in fixing the maximum permissible rate. (*Heald* v. *Friis-Hansen,* 52 Cal.2d 834, 838 [345 P.2d 457].)

be written in each trust receipt a charge of 10 percent simple interest per annum, but if the "documentation charge" was paid the interest would be waived.

In practice the parties used trust receipt forms which had been printed for the Bank of America (though the bank had nothing to do with the transactions). These forms were filled out with a description of the automobiles which were entrusted, and opposite each description were shown "Cost," a "documentation charge" of $25 and a "Release Price" which was $25 more than the "Cost" figure. Plaintiff's name was inserted in place of the bank as entruster, and in the blank space for the interest rate the figure 10 was entered. The evidence showed that, prior to the time defaults occurred in January 1960, Michell Bros. regularly paid plaintiff the $25 charges as agreed. The minimum charge of $25 was collected even though the obligation was repaid within a few days. No other interest or charges were demanded or collected. The amounts advanced by plaintiff ranged from $90 to $1,150 per vehicle.

## Usury

Since these "documentation charges" were far in excess of 10 percent interest, the only possible defense was that the charges were not interest within the meaning of the Constitution and the Usury Law. The judgment rests upon the trial court's finding that the charges were interest. In arriving at that decision, the trial court was required to look beyond the form of the transaction and determine its substance. The determination being essentially one of fact, it may not be upset on appeal if there is any substantial evidence, including reasonable inferences from the evidence, which support the finding. (*Janisse* v. *Winston Investment Co.*, 154 Cal. App.2d 580, 582 [317 P.2d 48, 67 A.L.R.2d 225].)

Plaintiff argues that the transactions constituted a loan of credit, not a loan of money, citing *Klett* v. *Security Acceptance Co.* (1952) 38 Cal.2d 770 [242 P.2d 873]. In the *Klett* case the plaintiff went into the retail furniture business without capital or credit. The arrangement, as explained in the opinion (at p. 776) was this: "[Plaintiff] was asking defendants, in effect, to purchase for cash from manufacturers the major items of furniture which were to constitute his stock in trade; to pay 90 per cent of the cost thereof while plaintiff advanced only 10 per cent of such cost; to keep an inventory of each item of furniture so stocked; to permit

plaintiff to have possession of such furniture, to display it on his salesroom floor and, ordinarily at least, not to expect to be repaid for his advances or his costs of doing business until and unless the furniture items were sold to retail purchasers; 'we were to pay him [defendants] one per cent a month for that privilege of having that, or whatever you want to call it, that flooring.' ''

Trust receipts were used to evidence the defendants' security interest in the furniture which they had purchased. Klett sued for the recovery of usurious interest and penalties, but the jury returned a verdict for defendants. In rejecting Klett's contention that the 1 percent per month charge constituted excessive interest as a matter of law, the Supreme Court said (at p. 779) : ''The controlling issue, however, as to this element of the case, is whether the monthly charges were exclusively for the forbearance of money or were for other services either wholly or at least in such part as to leave the amount paid as interest, if any, within a legal rate. This presents a question of fact and the evidence on it is conflicting but the issue does not appear to be a close one.''

Though the judgment for defendants was affirmed, the opinion made clear that trust receipt financing is not necessarily immune from the Usury Law. Referring to a case relied upon by plaintiff, the court said (at p. 783) : ''If *Oil City Motor Co.* v. *C.I.T. Corp.* (1935) 76 F.2d 589 [104 A.L.R. 240], purports to stand for the proposition that trust receipt transactions cannot be loans within the usury laws, then we cannot agree with it.''

The case at bench differs from the *Klett* case in several respects, the most important of which is that the trial court here found the facts against the lender. The relationship between Michell Bros. and the plaintiff in this case was quite different from the basis upon which Klett went into the furniture business. Michell Bros. was an established dealer in new and used cars. Michell Bros. did not request or need any services from plaintiff except such services as plaintiff saw fit to render for the purpose of protecting his security. Plaintiff simply advanced money to or for Michell Bros. so that the latter could stock a greater number of used cars for sale. Trust receipt financing was a convenient method of obtaining the desired working capital. The evidence supports the finding that plaintiff's money was loaned and that the $25 per month was the price of the loan.

We next consider plaintiff's alternative argument

that if the $25 charges were in some measure a charge for the use of money, there is no evidence to sustain the finding that each $25 charge constituted nothing other than interest.

There is nothing in the evidence to indicate that the term ''documentation charge'' has any special or trade meaning. Carl Michell testified that he had never before heard the expression though he had been 20 years in the automobile business. He also testified that plaintiff had told him that the $25 charge would be ''For the use of the money. . . .''

Plaintiff testified that he explained to Michell that he would check the cars that were floored, verifying serial numbers, registration and state of repair, and that he would prepare all of the necessary papers. He carried and paid for a single interest insurance policy protecting his interest in the cars against fire and theft. He testified that he did whatever was necessary to put the registration papers of the cars in order. He had an employee who assisted in this and he employed an attorney to prepare' legal documents. He conceded that the $25 charge was to include a profit for himself, and he estimated that his out-of-pocket cost averaged $15 to $17 per car.

■ The applicable law is set forth in the *Klett* case (38 Cal.2d at pp. 787-788) : ''Plaintiff also complains of the giving of the following instruction : 'A lender is not prohibited from charging an extra and reasonable amount for incidental services, expenses or risk additional to the lawful interest, other than for the loan of money. He may make a reasonable charge for investigating, arranging, negotiating, brokering, making, servicing, collecting and enforcing his obligation.

'' 'Such items, however, must be confined to specific service or expense incidental to the loan incurred in such a way as to preclude it being a device through which additional interest or profit on the loan may be exacted.'

''This instruction, given at defendants' request, is a correct statement of the law *(In re Fuller* (1940) 15 Cal.2d 425, 433, 434 [102 P.2d 321] ; see *Haines* v. *Commercial Mortgage Co.* (1927) 200 Cal. 609, 616 [254 P. 956, 255 P. 805, 53 A.L.R. 725], pointing out that a general charge for 'expenses' or 'services' not attributable to any particular expense or service may well be but a device to evade the usury law).''

■ The record here supports the determination that the $25 was a general charge not attributable to any particular service. The expenses which plaintiff has described are a part of the necessary cost of doing business by anyone who is en-

gaged in automobile financing. A lender who makes a flat charge in excess of the legal rate of interest may not defend a usury charge merely by showing that he had some business expenses which reduced his net profit to a figure within the legal rate of interest.

### Proceeds of Sales After Repossession

 Five of the counterclaims involved automobiles which were repossessed and sold by plaintiff for a price greater than the amount which plaintiff had advanced. The excess on the five cars totaled $892, none of which was turned back to Michell Bros. Defendants alleged that the difference between sale price and the amount loaned was interest. The trial court found this allegation to be true. The judgment includes the sum of $2,676 (which is $892 trebled) as damages on these five counterclaims.

The evidence does not support the finding that the profit made by plaintiff on sale after repossession was interest within the meaning of the Usury Law. The applicable law is stated in *Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287, 290-291 [9 P.2d 819] : "It is also elementary that the contract must in its inception require a payment of usury or it will not be held a violation of the statute and it may not be judged after some default of the borrower, which default alone authorizes penalties or forfeitures which, if exacted in the beginning, would have been a violation of the statute. [Citations.] The cases above cited are also authority for the proposition that a debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract."

The Uniform Trust Receipts Law (Civ. Code, § 3012 et seq.), which was in effect at the time of these transactions, provided that an entruster who recovered possession after default had two distinct remedies. Civil Code section 3016.2, subdivision (3)(b), authorizes the entruster to sell the goods after notice, for the account of the trustee, remitting any excess to the trustee and holding the trustee liable for any deficiency. The other remedy was described in subdivision 5 of the same section: "As to articles manufactured by style or model, the terms of the trust receipt may provide for forfeiture of the trustee's interest at the election of the entruster, in the event of the trustee's default, against cancellation of the trustee's then remaining indebtedness; . . ."

The trust receipts provide: "Trustee agrees with respect to each item held hereunder which is manufactured by style or model that upon default of Trustee, Entruster may in its discretion cancel the then remaining indebtedness with respect to such item and forfeit all Trustee's interest in and to such item to the extent and in the manner provided by Section 3016.2(5) of the Civil Code of the State of California."

 The burden was upon the debtor to prove facts showing usury. (*Sandell Inc.* v. *Bailey*, 212 Cal.App.2d 920, 931 [28 Cal.Rptr. 413].) The only evidence concerning the repossession and sale is in the testimony of plaintiff and in the notations which he made on the trust receipt which covered those five automobiles.

Plaintiff testified that Michell voluntarily turned the cars back to him. Plaintiff also testified that he relied upon the provision in the contract which authorized him to retain the cars and cancel the debt, and that in his books of account he gave Michell Bros. credit for the amount loaned and made a notation for his accountant to enter the excess in the account called "documentation charges."

Defendants urge that the entry of the excess in plaintiff's "documentation charge" account is evidence that the money was interest. We cannot so regard it. Plaintiff's books of account are not in evidence. The testimony was that plaintiff recorded his cash receipts in a notebook. For the guidance of his accountant he used the letter F (for flooring) to designate repayment of advances, and D (for documentation charge) to indicate any excess. This oversimplified bookkeeping method simply acknowledges that the excess was something other than a return of capital, but not that it was interest.

Defendants have not disputed the repossession itself, nor have they challenged plaintiff's privilege of declaring a forfeiture pursuant to his agreement and the trust receipts act. Neither in their pleading nor in their pretrial statement did defendants make any attack upon those transactions other than to claim that the profits constituted usurious interest. This contention has not been sustained.

Defendants point out an inconsistency: Plaintiff has recovered a deficiency judgment for the three repossessed cars which were sold at a loss, though he retains the overage on others. At the trial defendants stipulated that plaintiff was entitled to recover the deficiency as prayed. The record is clear that defendants have not chosen to litigate the regularity of the repossessions or the forfeiture procedures. Their

case in the trial court was limited to the usury issues. Whatever the explanation for the apparent inconsistency may be, it is not an issue on this appeal.

Since the evidence with respect to the five counterclaims does not support the finding that interest was paid, the judgment must be reduced by the amount of $2,676.

### Attorney Fees

The trust receipts provide that the trustee (Michell Bros.) shall pay a reasonable attorney fee to be added to the amount due in the event of any action by the entruster (plaintiff) to enforce the obligation. Inasmuch as plaintiff brought this action to enforce the obligation, and since the court found in plaintiff's favor on the complaint, he contends that attorney fees should have been awarded to him.

The reason plaintiff is not entitled to an award of attorney fees is that, at the time he commenced his action, defendants owed him nothing. Code of Civil Procedure section 440 provides: "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated, so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

The existence of a greater claim in favor of Michell Bros. against plaintiff amounted to discharge of plaintiff's claim. (*Jones* v. *Mortimer,* 28 Cal.2d 627, 633 [170 P.2d 893].) Plaintiff had no rights to be enforced against defendants, nothing but a partial defense to Michell Bros.' causes of action for usury.

The order denying the motion for a new trial is not appealable, and the appeal therefrom is therefore dismissed.

The judgment in favor of respondent Irving I. Bass, as trustee in bankruptcy, is reduced by the amount of $2,676, leaving a net judgment of $7,232.02 in his favor. As so modified the judgment is affirmed. Each party shall bear his own costs.

Jefferson, J., and Kingsley, J., concurred.