[Civ. No. 17385. First Dist., Div. One. Oct. 22, 1957.]

JOSEPH B. JANISSE et al., Respondents, v. WINSTON INVESTMENT COMPANY (a Corporation) et al., Appellants.

Paul G. Dobbins for Appellants.

Clarke Weigand for Respondents.

PETERS, P. J.—Plaintiffs brought this action for an accounting and other relief, alleging that a promissory note signed by them was usurious. Defendants claimed to be bona fide purchasers of the note. The trial court found that the transaction was usurious and that defendants knew that it was, and entered its judgment reducing the principal of the note by the amount of the interest paid and by treble the amount of interest paid during the year preceding the filing of this action. Defendants appeal, contending that plaintiffs

are estopped from urging the usury, that evidence was improperly admitted, and that the trial court erred in finding the transaction to be usurious.

Article XX, section 22,* of the state Constitution, adopted in 1934, fixes the maximum rate of interest that may be charged on loans of the type here involved at 10 per cent per annum. The Usury Act (2 Deering's Gen. Laws, Act No. 3757), in section 2, provides that if excessive interest is provided for in a transaction, the entire interest provision is void, while section 3 provides that the person paying excessive interest may recover treble the amount of the interest paid during the year preceding the filing of the action.

In the present case plaintiffs executed a promissory note to one Gudmundsen for $4,700 but received, less charges, but $3,055. The note provided for 6 per cent interest. Defendants are the assignees of the note and claimed to be bona fide purchasers of it for value. If the transaction was one in which defendants purchased, in good faith, a $4,700 note at a discount for $3,055 it would, of course, not be a usurious transaction. But if the payee was, in fact, a dummy, and if, in fact, the form of the transaction was a sham and subterfuge to cover up the fact that defendants actually loaned the money to plaintiffs, as found by the trial court, then the "discount" was in fact interest and the transaction obviously usurious.

In determining whether the findings are supported, the usual appellate rules prevail. ■ If there is any substantial evidence or any reasonable inference from the evidence to support the findings, the appellate court cannot substitute its judgment for that of the trial court. (*Brocke* v. *Naseath*, 134 Cal.App.2d 23 [285 P.2d 291, 51 A.L.R.2d 1083]; *Murphy* v. *Ablow*, 123 Cal.App.2d 853 [268 P.2d 80].) ■ It is a question of fact as to whether a particular transaction is or is not usurious. (*Middlekauf* v. *Vinson*, 106 Cal.App.2d 204 [234 P.2d 742].) ■ Where the form of the transaction makes it appear to be nonusurious, it is for the trier of the fact to determine whether the intent of the contracting parties was that disclosed by the form adopted, or whether such form was a mere sham and subterfuge to cover up a usurious transaction. (*Martyn* v. *Leslie*, 137 Cal.App.2d 41 [290 P.2d 58]; *Anderson* v. *Lee*, 103 Cal.App.2d 24 [228 P.2d 613].) The trial court may look beyond the form of the transaction and ascertain its substance. (*Batchelor* v. *Mandigo*, 95 Cal.App.2d 816 [213 P.2d 762].)

*There are two sections with this number.

It was found that on October 29, 1952, the defendants orally agreed to lend to the plaintiffs $3,055; that Augusta Kent, a licensed real estate broker, made the arrangements between the parties; that Mrs. Kent acted as a broker in the transaction "for and with full knowledge and approval and consent of defendants"; that the note was made payable to one Gudmundsen and was secured by a deed of trust on the home of plaintiffs; that the note and deed of trust were dated November 7, 1952, and on that date were "assigned" to defendants; that the note was for $4,700 payable at the rate of $47.50 a month, which payment included interest at 6 per cent; that such payments were to continue until December 15, 1957, when the total balance still owing became due and payable; that defendants paid for the "assignment" the sum of $3,055, from which a commission of $275 was deducted and paid to Mrs. Kent; that other expenses were deducted so that plaintiffs received but $2,765.50 for their $4,700 note; that Gudmundsen was knowingly used as a dummy in the transaction "solely for the purpose of concealing the usurious nature of the transaction" and "in accordance with previous understanding and arrangement between defendants and Augusta T. Kent"; that defendants knew at the time "they purported to purchase the note and at the time said note was executed that no consideration had been or would be given for said note by the said payee . . . and intended to collect usurious interest upon the loan to plaintiffs"; that up to April of 1955 plaintiffs paid to defendants $1,377, all of which should be credited to principal; that plaintiffs are entitled to other credits as provided in the statute; that the balance owing defendants is $614.12, without interest.

The court also found that when defendants purported to purchase the note they knew that no such note or deed of trust was in existence; that they knew such documents had not yet been executed and knew that Mrs. Kent would thereafter have such a note executed payable to a dummy; "that defendants did not purchase the note . . . in good faith, but did so with full knowledge that it was executed as evidence of the agreement that they had previously made to loan plaintiffs $3055.00 in consideration of the repayment of $4700.00 and interest."

Based on these findings the court adjudged that plaintiffs owed defendants a balance of $614.12; that such balance could be repaid at the rate of $47.50 per month, without interest;

that defendants were enjoined from accelerating the note or foreclosing the deed of trust as long as the payments are made.

The evidence, and the reasonable inferences therefrom, overwhelmingly support the findings. The defendants are the directors and sole owners of the Winston Investment Company, and are licensed real estate brokers engaged in the purchase of first and second deeds of trust. In 1950 or 1951 Mrs. Kent, also a real estate broker, became acquainted with defendants, and until sometime in 1954 dealt with them in the purported sale and purchase of some 24 notes and deeds of trust. Mrs. Kent subsequently was convicted of grand theft. She testified that in her dealings with defendants she did not act as their agent and did not receive any salary or commissions directly from defendants. She, in fact, received her commissions by deductions from the loans made to the borrowers. One of the defendants testified that he terminated his relationship with Mrs. Kent in 1954 because of her improper activities in connection with another loan transaction.

In October of 1952 plaintiffs, who already had a first loan on their home, desired to borrow money to enter a business deal with B. Scott Gudmundsen. The latter had heard of Mrs. Kent and of the fact that she loaned money on second mortgages, and sent plaintiffs to her. Plaintiffs told her that they wanted to borrow $3,500, with their home as security. Mrs. Kent then telephoned defendants, told them someone had been in who "wanted a loan," and asked defendants to come to Oakland to see the home offered as security. She told defendants that there was a first deed of trust on the property, but did not tell them that there was a second deed of trust because "there wasn't one until we made it." On October 28th or 29th defendants came to Oakland, met Mrs. Kent, and went with her to plaintiffs' home. Mrs. Kent introduced one of defendants to Mrs. Janisse and told her that they "had come to see the house about the loan." Mrs. Janisse showed them about the house. The defendant asked her all about the first loan on the property, but made no mention about, and asked no questions concerning, any second note or second lien. In response to a query from Mrs. Janisse as to whether they would get the loan, Mrs. Kent and this defendant both said that "they thought we would."

Mrs. Kent testified that after this visit the defendants decided "how much they would let her have"; that she then called Mrs. Janisse and told her "they would make the loan,"

and gave her the details; that Walter Schmidt decided that the note must be for $4,700 with the actual loan around $3,000; that Gudmundsen's name was put on the note instead of Schmidt's because "to sell the note it had to be made to a third party." In describing defendants' methods of operation Mrs. Kent testified that defendants always "looked at all the property before they could say how much money they could loan on it."

The defendants denied some of the testimony of Mrs. Kent and of Mrs. Janisse, claiming that the transaction was simply one in which Mrs. Kent had a $4,700 note of plaintiffs that she wanted to sell, and that defendants bought it at a discount. The credibility of defendants and of the other witnesses was for the trial court. That court has, in effect, found that defendants did not tell the truth about the nature of the transaction. That finding is overwhelmingly supported.

The evidence shows that after defendants and Mrs. Kent left plaintiffs' house they went to the home of Clifford Dupree to investigate a similar transaction. Dupree refused to go through with the deal when he learned that he would only get $1,900 and would have to pay back $3,800.

Defendants then returned to their San Francisco office. Under date of October 29, 1952, they wrote a letter of instructions to the Alameda County-East Bay Title Insurance Company* depositing $3,055 for a note to be secured by a second deed of trust on the plaintiffs' home, and enclosing a request for notice of default signed in blank. The letter also stated that the note was to be for $4,700 and "said note is [to] be payable at $47.50 per month, including interest at six per cent per annum, and said note is to be due in full five years from date of note." No mention was made as to who was the holder of this note, the letter directing that "This loan is to be assigned to the Winston Investment Company." Mrs. Kent prepared the note and deed of trust and they were not executed by the parties until some 10 days later.

Gudmundsen testified that early in November, 1952, Mr. Janisse told him to go to the title company. This he did and was told by a title company employee that he was to sign a number of papers as a third party, that he would not be liable in the transaction, and was not to receive anything, but that he had to sign the documents if plaintiffs were to get

---

*We make no comment about the activities of the title company in this transaction, other than to recount the facts, because the title company is not a party to this proceeding.

any money. One of the documents he then signed was an "assignment" of the $4,700 note and deed of trust to the defendants. He testified that he did not understand the nature of the transaction and did not receive any money out of it.

Mr. Janisse testified that he understood that the $4,700 note represented the loan, plus a $1,000 bonus to the lender, plus all the accumulated interest. He did not know that interest was being deducted from his monthly payments until after he had made several of them. He then protested, in vain, but continued to make the payments because he feared that otherwise he would lose his home.

Plaintiffs introduced into evidence the documents relating to four other transactions handled by defendants and Mrs. Kent in a manner similar to the instant case. In these transactions, as in the instant case, it was obvious that the "assigned" deed of trust and note were not in existence until defendants purported to buy them. In one of these transactions the note and second deed of trust were made directly to defendants instead of to a dummy. These resulted in a series of letters to the title company trying to correct the form of the transaction. In several of these letters defendants expressed the fear that unless the form of the transaction was corrected they would be subject to a charge of usury. Upon directions from defendants the form of the transaction was changed by the title company to make it appear that defendants were not the lenders of the money, but the assignees of an existing note and mortgage.

We have recounted the findings and evidence at some length, not because we have any doubts that they disclose a deliberate and illegal attempt to collect a usurious rate of interest, but because we think that the public interest will be served by exposing in full this illegal attempt to mulct a necessitous borrower. While the presumption in such cases is in favor of legality (*Garrick* v. *J.M.P., Inc.*, 150 Cal.App.2d 232 [309 P.2d 896]; *Lindsey* v. *Campbell*, 132 Cal.App.2d 746 [282 P.2d 948]), here the presumption was clearly rebutted. It is obvious from the record that defendants engaged in a thinly veiled scheme to make it appear that they were the purchasers of the note at a big discount, when in fact they were the lenders of the money. The method used to camouflage the nature of the transaction was crude and illegal. Such tactics should not be condoned. They should be fully exposed to the end that necessitous people will not, in the future, be defrauded by such a scheme, and so that the beneficent purposes of the usury statute will not be evaded. In fact, the

appeal, insofar as the contention is made that the transaction was not usurious, approaches the frivolous. It is too obvious to require detailed demonstration that Gudmundsen was a dummy; that defendants knew it; that defendants determined whether a loan should be made to plaintiffs and for how much; that defendants then determined the figure to be inserted in the Gudmundsen note; and that defendants, in fact, made the loan to plaintiffs.

Defendants make only a token argument to the effect that the transaction was not usurious. Their major argument is that the doctrine of estoppel is a good defense to the charge of usury, and that, under the facts, plaintiffs are estopped from making the charge. It can readily be admitted that, under proper facts, the defense of estoppel is applicable to a charge of usury in this state. (*Lindsey* v. *Campbell,* 132 Cal.App.2d 746 [282 P.2d 948] ; *Martin* v. *Ajax Construction Co.,* 124 Cal.App.2d 425 [269 P.2d 132] ; *Martyn* v. *Leslie,* 137 Cal.App.2d 41 [290 P.2d 58] ; *Stock* v. *Meek,* 35 Cal.2d 809 [221 P.2d 15].) But these same cases establish that the borrower and lender are not *in pari delicto* in a usurious transaction, and that an estoppel does not arise simply because the borrower knew of the usurious nature of the transaction, took the initiative in seeking the loan, and paid usurious interest without protest. (See also *Williams* v. *Reed,* 48 Cal. 2d 57 [307 P.2d 353].)

 Defendants contend in their briefs, and argued at oral argument, that the transaction was a legitimate business deal; that defendants in good faith simply purchased an existing $4,700 note at a discount for $3,055; that all this was accomplished through Mrs. Kent who was the agent of plaintiffs and not of defendants; that the transaction was a fraudulent scheme contrived by plaintiffs and their agent Mrs. Kent and not by defendants. If these were the true facts, undoubtedly defendants' defense would be tenable. But they are not the facts found by the trial court and overwhelmingly supported by the record. Mrs. Kent acted as a broker in arranging the loan. This was done with the knowledge, approval and consent of defendants. Defendants knew there was no second loan on the property until they fixed the amount, and the amount of the note. As already pointed out, defendants were in fact the lenders and not Gudmundsen, and defendants knew this and arranged for it. Under such circumstances no possible basis for an estoppel exists.

 Equally without merit is defendants' contention that

the trial court committed prejudicial error when it admitted the documents in four other transactions in which Mrs. Kent and defendants were involved. They contend that these instruments had no connection with the instant case, and if they were intended to show usury and bad faith in other transactions, the background of the execution of these documents should have been introduced. Plaintiffs correctly maintain that these four transactions were identical in pattern and closely related in time to the instant case, and that the evidence was admissible on the issue of the claimed good faith of defendants. ██ As was said in *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, at page 341 [163 P.2d 869, 165 A.L.R. 621] : "All of the negotiations, circumstances and conduct of the parties surrounding and connected with their contracts may be material in determining whether the form thereof covered an intent to violate the usury law, and the burden of establishing evasion must be met by evidence clearly showing the intent."

██ It is well settled that evidence of other transactions to show motive, intent, knowledge, plan, and absence of mistake, in both civil and criminal cases, is admissible. Thus in *Atkins Corporation* v. *Tourny*, 6 Cal.2d 206 [57 P.2d 480], the court held that evidence of other similar frauds committed by defendant at about the same time as the challenged transaction should have been admitted on the issue of intent. (See also *People* v. *Morani*, 196 Cal. 154 [236 P. 135] ; *People* v. *Sindici*, 54 Cal.App. 193 [201 P. 975] ; *Scott* v. *Times-Mirror Co.*, 181 Cal. 345 [184 P. 672, 12 A.L.R. 1007].)

██ Defendants concede that there may have been irregularities on the face of these collateral transactions, but seek some comfort in the fact that there was no evidence that the borrowers in these transactions ever complained about them prior to the filing of this suit. Obviously, if the transactions were in fact usurious, they would be relevant on the issue of intent regardless of the presence or absence of a complaint. The contention that plaintiffs should have introduced evidence of the background of these transactions is also without merit. The irregularities were apparent on the face of the documents. If defendants wanted to rebut this prima facie showing on the issue of intent they should have introduced the rebutting testimony. There was no error in the admission of the testimony.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.