[Civ. No. 23477. Second Dist., Div. Three. Mar. 25, 1959.]

N. ADLER, Respondent, v. JACK BLAIR et al., Defendants; DOROTHY KALLEEN BLAIR, Claimant and Appellant.

Robert S. Butts for Appellant.

D. Brandon Bernstein for Respondent.

VALLÉE, J.—Appeal from a judgment denying a third party claim.

Plaintiff Adler brought suit against Jack Blair to recover in excess of $6,750. An attachment issued and was levied on an automatic laundry business, referred to as the "North Broadway Store." Dorothy Blair filed a third party claim. On stipulation, the attachment was released and the property sold. Plaintiff Adler filed an undertaking in double the value of the property levied on.

After a hearing the court found that Jack Blair was the part owner and entitled to a share in the possession of the property attached at the time of the levy; Dorothy Blair was not and is not the sole owner or entitled to its exclusive possession; she has no exclusive right, estate, title, or interest therein; and not all of the property was her separate property. The judgment was to the same effect. Dorothy Blair appeals.

Appellant first asserts the attached property was her separate property and was not subject to attachment for the separate debt of Jack Blair; that the finding that he had an interest in the property is contrary to the evidence.

Viewing the evidence in the light most favorable to respondent, disregarding conflicting evidence, the record shows these facts. Jack Blair and Dorothy Blair were married on January 3, 1949, and have been husband and wife since. At the time

of their marriage Jack was in the "launderette" business. On April 2, 1949, Jack gave Dorothy a letter in which he stated:

"All of the money we have is money you inherited from your uncle. any business you buy or investments you may make with that money is your separate property and I do relinquish and waive any rights to your separate property or the earnings from your separate property. If I she should help you with or work in your business I will not claim anything against you for my services.

"In other words, except for the 1949 convertible Buick which I gave to you and my clothes and perhaps $50 or so I am clean and have nothing. All else is yours and I have no right to it."

Thereafter Dorothy bought, operated, and sold a succession of laundromats. Jack and Dorothy worked together in the laundromats that were acquired from time to time. He selected locations. He made arrangements for the purchase of equipment. He managed some of the laundries. He composed material advertising the business. He opened a laundromat in Ontario. The lease of a store in Compton was in the names of both Jack and Dorothy. At the time the Compton lease was executed Jack told Dorothy, "We are doing very well and we should start another store, and this is a good location." Dorothy testified that most of the leases of stores "probably" bore Jack's signature. Jack negotiated for and secured six leases in writing covering laundries in which he was named as lessee, including the North Broadway Store, and made deposits with the lessors at the time the leases were executed.

In 1956 Dorothy had four laundromats. In June 1956 she entered a sanitarium where she remained until December 15, 1956. While she was in the sanitarium Jack sold the four laundromats under a power of attorney purportedly executed by Dorothy. On October 24, 1956, Jack leased the North Broadway Store, the property attached. The lease, in writing, was in Jack's name as sole lessee. He made a deposit of rent of either $150 or $300. He alone signed an application for an industrial waste permit for that store. He procured liability policies on six laundromats, including the North Broadway Store, in each of which he was named as sole beneficiary. He collected the moneys and emptied wash machines and coin boxes in the North Broadway and other stores. He contracted for the plumbing to install washers in the North Broadway Store.

On April 15, 1956, Jack and Dorothy executed a conditional

sales contract and promissory note for the purchase of equipment for the stores. On February 11, 1957, Jack signed a document in which he stated that six specified laundromats, including the North Broadway Store, were the separate property of Dorothy and that in consideration of her forbearing instituting action to determine the true nature of the ownership, he assigned to her as her separate property any and all right, title, and interest which he might have in and to them.

On September 17, 1957, Jack and Dorothy executed a chattel mortgage in favor of Ardmore Chemical Company covering four laundries, including the North Broadway Store. On release of the attachment, Jack gave the sheriff a receipt for about $400, taken in the coin machines in the North Broadway Store while the sheriff was in possession.

Jack made the arrangements for the purchase of machinery and equipment for six stores, including the North Broadway Store, on conditional sales contracts. Dorothy did not know when the equipment was delivered to three of the stores.

Jack and Dorothy filed joint income tax returns every year during their marriage except 1956.

The burden was on appellant to establish that the attached property was her separate property. (Code Civ. Proc., § 689.) The trial court found that Dorothy did not sustain that burden. The question was one of fact. (*Bruhnke* v. *Bowlus-Teller Mfg. Co.*, 21 Cal.App.2d 317, 318 [69 P.2d 208].) It is presumed that a person is the owner of property from exercising acts of ownership over it. (Code Civ. Proc., § 1963, subd. 12.) Such presumption is evidence and supports a finding made in accordance with it, even in the face of contrary evidence. (18 Cal.Jur.2d 490, § 67.) It is for the trier of fact to determine under the circumstances of the case whether to give greater weight to a disputable presumption or to contrary evidence. (*People* v. *J. P. Loubet Co.*, 147 Cal.App.2d 566, 568 [305 P.2d 651].) The conclusion of the trial court is amply supported by the evidence we have recited. There is evidence in the record which would have supported a contrary finding, but it cannot be said as a matter of law that the property attached was Dorothy's separate property.

Appellant lays great stress on the letter of April 2, 1949, from Jack to Dorothy, an agreement of January 25, 1955, between Jack and Dorothy by which Jack agreed that one laundromat was Dorothy's separate property, a similar agreement of June 25, 1955, with respect to another laundromat, a

similar agreement of March 22, 1956, with respect to two other laundromats, a grant deed dated March 14, 1956, conveying a parcel of realty to Dorothy, a quitclaim deed dated March 19, 1956, from Jack to Dorothy quitclaiming the same parcel to her, a statement dated February 10, 1957, addressed to Great Northern Trust signed by Dorothy stating she was the "sole and exclusive owner" of six laundromats including the North Broadway Store, a chattel mortgage executed by Dorothy on February 11, 1957, covering a Jaguar, the document of February 11, 1957, signed by Jack stating that six "automatic laundries" were Dorothy's separate property, and deposit books and records of bank accounts in the name of Dorothy alone. The trial court was not required to accept these documents at face value. (*Watwood* v. *Steur*, 89 Cal. App.2d 620, 623-624 [201 P.2d 460].) In fact, the court may have inferred that because Jack signed successive documents stating the laundromats were Dorothy's separate property that they were signed for the sole purpose of making it appear he had no interest therein when in fact he had an interest.

 Appellant asserts the court in fact granted a judgment of nonsuit, and that a nonsuit was improper since there was evidence supporting the third party claim. The point is untenable. Appellant introduced evidence in support of her claim. One witness for respondent testified out of order. At the conclusion of appellant's evidence her counsel stated he had no further evidence to produce. He then asked leave to file an amended third party claim. The request was denied. The following then occurred: "MR. BERNSTEIN [attorney for respondent]: We rest, your Honor. THE COURT: You are at liberty, however, to add to the record, if you wish. MR. BERNSTEIN: No, your Honor. A lot of our testimony may be cumulative. We have put on the testimony of Mr. Drummond, only one witness on our side for the plaintiff, your Honor, and we would rest also." No motion for a judgment of nonsuit was made. The record clearly shows the cause was submitted on the merits.

 Appellant contends the court erred in denying her leave to file an amended third party claim. The request to file the amended claim was made at the end of a three-day hearing after all the evidence was in. In denying the request, the court stated that "regardless of what amendments might be filed there still would not be any adequate basis for asserting a Third Party Claim to the property which is in controversy." Whether such an amendment should be al-

lowed is a matter in the discretion of the trial court, and its ruling will not be disturbed on review unless that discretion was abused. (*Bruce* v. *Bruce,* 121 Cal.App.2d 661, 663 [263 P.2d 895].) No abuse of discretion is shown.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.