[Civ. No. 18846.   First Dist., Div. Two.   July 25, 1960.]

CLYDE HARRIS, SR., et al., Respondents, v. GRACE
GALLANT et al., Appellants.

Thiel, Sassone & Howard and Harry D. Miller for Appellants.

Paul D. Morse for Respondents.

STONE, J. pro tem.*—This action was brought by respondents to have a promissory note and deed of trust declared void or in the alternative reformed; to enjoin appellants from foreclosing the deed of trust; for usurious interest penalties; and

*Assigned by Chairman of Judicial Council.

for exemplary damages. The court, sitting without a jury, granted respondents the relief prayed for by declaring the note and deed of trust void, allowing treble damages under the usury laws and awarding exemplary damages.

The record discloses that respondents were interested in buying a house and got in touch with one Hunter, a real estate broker, and his salesman, Walter Johnson. Respondents told Hunter that they had only $300 for a downpayment and that this had been borrowed. Hunter showed them the home of Thaymon Holley, who wanted $1,500 for his equity, and Hunter told respondents that he could arrange for them to borrow the additional $1,200. Respondents were to assume also a first encumbrance against the property which required payments of $61 per month. Respondents told Hunter that their limited income and fixed obligations prevented them paying more than a total of $70 per month on both the first lien, which they were assuming, and the $1,200 loan. After some negotiation they and Hunter agreed upon monthly payments of $76 to be allotted $61 on account of the assumed encumbrance and $15 on account of the loan. As an inducement to respondents, Hunter promised to help them if they had difficulty in meeting the two monthly payments.

After the respondents orally told Hunter they would buy Holley's property if they could borrow $1,200, Hunter got in touch with appellant Jacobs. Appellant was a licensed real estate broker who made a practice of buying second encumbrances at a discount. He dealt directly with Hunter with whom he had transacted business in the past. Hunter in turn negotiated with respondents and Holley, the seller. Appellant advised Hunter that he would place $1,250 in escrow in return for an $1,800 note secured by second encumbrance on the property respondents were to purchase. He also specified that the note should bear 7½ per cent interest and that monthly payments of $15 should be made for 11 months only, the entire unpaid balance to become due the 12th month. Appellant Jacobs inspected the premises, investigated the first lien thereon and specified his own escrow requirements.

Respondent Harris had a seventh grade education and his wife could neither read nor write. They had had no business experience and they had never bought or sold real property before. Harris was employed in an iron foundry earning approximately $300 per month. Broker Hunter, accompanied by salesman Johnson, took a note, deed of trust and authorization to sign escrow instructions to respondents' home for signature.

Respondent Harris asked Hunter to explain the papers and was told they would give him "legal right" to the house. He testified Hunter also told him that all of the "papers" were in accordance with the terms to which respondents had previously agreed. Respondents denied that anything was said about an $1,800 note or about interest at 7½ per cent or about the note maturing after 11 payments of $15 per month. Respondent Harris also testified that he requested an opportunity to read the documents but that Hunter told him he was in a great hurry, that everything was "legal" and that any time respondents wanted to see the papers or secure any information to call at Hunter's office. Respondents then signed the papers without reading them, Mrs. Harris signing by mark. Respondents testified that they signed because they knew and trusted Hunter, the broker, and Johnson, his salesman. Hunter denied "rushing" the respondents or misrepresenting the terms of the note. Johnson, the salesman, did not testify. The note which respondents signed was actually for $1,800, with interest at 7½ per cent, and provided for eleven $15 monthly payments with the entire balance due at the end of one year. The note and deed of trust were made in favor of the seller.

Seller Holley, who insisted upon cash for his equity, executed a deed to the premises and endorsed the note and assigned the deed of trust at the request of the broker, who placed them in escrow. The broker had authorization from seller and buyers to prepare and sign escrow instructions on their behalf.

After the escrow was closed respondents received a payment record card indicating a principal of $1,800 and interest at 7½ per cent. Respondent Harris testified that he then asked Hunter about the discrepancy between these figures and the agreed amounts of $1,200 principal and 6½ per cent interest. He said that Hunter told him not to worry, that he would "take care of that." Subsequently respondents defaulted in their payments and appellant demanded payment in full. Notice of default was filed and respondents instituted this action.

At the time the transaction occurred Civil Code, section 3081.5, insofar as here pertinent provided: "Any loan, made after the effective date of this act, which provides for installment payments and the maturity date of which is less than three (3) years shall require substantially equal installment payments over the period of the loan, with the final payment not payable until the maturity date thereof; pro-

vided, that no installment including the final one shall be greater than twice the amount of the smallest installment.''
Appellant contends that the trial court erred in finding the note and deed of trust to have been executed in violation of this statute. He denies that he made a loan to respondent buyers, contending that there were two separate transactions, the first a sale by which the seller accepted a note for $1,800 secured by a second deed of trust as consideration for a deed conveying seller's equity in the property, which was followed by a sale of the note and deed of trust by seller to appellant at a discount of $550. Upon this interpretation of the transaction appellant claims the status of a holder in due course.

The question is whether there is evidence to support the trial court's finding that there was but a single transaction by which appellant loaned the buyers the money to pay the seller cash for his equity, in return for a note evidencing the loan plus a $550 bonus. It is uncontradicted that the seller demanded $1,500 cash for his equity and that he refused to accept a note and second deed of trust in lieu of cash. Nor is it questioned that the buyers had only $300 and that Hunter, the real estate broker, advised buyers that he would arrange for a loan to pay the seller cash. It is also uncontradicted that the broker got in touch with appellant, dealer in second mortgages, and gave him all of the information appellant ever received concerning the transaction. Pursuant to information given him by the broker, with whom he had had business relations before, appellant inspected the premises, investigated the first encumbrance and then offered to place $1,250 in escrow in return for the endorsement and assignment to him of a note for $1,800 secured by a second deed of trust on the property, the $1,800 note to bear 7½ per cent interest. It is pertinent that all of the amounts fixed, $1,250 cash to be deposited in escrow, an $1,800 note bearing 7½ per cent interest, eleven $15 monthly payments with unpaid balance due the 12th month, were determined before the note and deed of trust were prepared. From this evidence the trial court determined that appellant fixed the amount of the loan, $1,250, and the amount of the note, $1,800, which he accepted in return for the loan. The inference and finding are not unreasonable since it was only after appellant had stated his terms that the documents were prepared by broker and executed by the buyers and the seller. Furthermore, the money placed in escrow was paid directly to the seller while the note and second trust deed were delivered directly to appellant.

Thus there is evidence which supports the trial court's finding that the transaction was a mere subterfuge to circumvent the restrictions of Civil Code, section 3081.5. ▮ It is axiomatic that if there is any substantial evidence, contradicted or uncontradicted, which supports the finding of the trial court an appellate court will not set it aside. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) ▮ It was for the trier of fact to determine whether the form of the proceeding was a mere sham and, if so, the true substance of the transaction. (*Janisse* v. *Winston Investment Co.*, 154 Cal.App.2d 580, 582 [317 P.2d 48, 67 A.L.R.2d 225].) ▮ Substance is more important than form and from it the true intent of the parties must be determined. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 740 [269 P.2d 12].) ▮ In ascertaining the facts the court may look to all of the circumstances surrounding the transaction. (*Shirley* v. *Britt*, 152 Cal.App.2d 666, 669 [313 P.2d 875].) ▮ And an appellate court will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact. (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557].) ▮ Considering the evidence in light of the rules governing the review of findings of a trial court, we cannot say that the finding here that the transaction between respondents and appellant was in the nature of a loan is without support in the record. The $1,800 note clearly violated Civil Code, 3081.5, *supra*, by providing for 11 monthly payments of $15 with the total balance payable the 12th month. This violation the court decreed made the note and deed of trust null and void and it enjoined enforcement of both.

▮ The court also held the note to be usurious by reason of the $550 bonus which was in addition to interest at 7½ per cent. Respondents were allowed treble the amount of interest paid. This was proper since Civil Code, section 3081.3, subdivision (c) provides: "No loan secured by real property shall be made which provides for payment of interest in excess of ten per cent (10%) per year as provided by section 22 of article XX of the California Constitution, and as implemented by the Statutes of 1919, page LXXXIII, known as the 'Usury Law.' " Although the finding that the note is usurious is correct, it is irreconcilable with the finding that the note is null and void. Under our usury laws interest is uncollectible and penalties are provided, but the principal is not forfeited. (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 623 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; 49 Cal.Jur.

2d p. 675.) It is quite clear that the Legislature intended the real estate loan statute of 1955, chapter 1791, page 3299 et seq., of which Civil Code, section 3081.5 is a part, to complement the usury statutes which implement article XX, section 22 of the Constitution. Expression of this intent is contained in the act itself (see Civ. Code, § 3081.3, subd. (c), *supra*). The note being usurious, the award of three times the amount of interest paid to appellant was proper (*Terry Trading Corp.* v. *Barsky,* 210 Cal. 428 [292 P. 474]). However, enjoining appellant from collecting any interest leaves unanswered the question of what happens to the balance of the unpaid principal. The note itself does not provide an answer since by its terms the entire unpaid balance is due the 12th month. The court found that the respondents believed and relied upon the representation that the $15 monthly payments were to continue until the note was paid in full. We conclude that the principal actually loaned should be paid accordingly. There are cases concerning usury which suggest this answer—in fact the identical problem was presented in *Janisse* v. *Winston Investment Co., supra.* In that case a usurious note provided for payments of $47.50 per month for a given number of months after which the unpaid balance became due. The trial court held that the monthly payments of $47.50 should continue without interest until the principal was paid in full, and enjoined defendants from accelerating the note or foreclosing the deed of trust as long as the monthly payments were made. The judgment was affirmed. In our case the trial court should have determined the balance of principal due after deducting the $550 bonus, and crediting the amount paid as interest together with the usury penalty. The rule in *Janisse* should then have been followed and the balance remaining ordered paid at $15 per month without interest. Appellant should also be enjoined from accelerating or foreclosing so long as the monthly payments are made when due.

▮ The trial court also awarded respondents exemplary damages and appellant argues that the findings of fraud and of his intent to injure respondents are insubstantial. As we have pointed out, there is evidence to support the court's finding that appellant intended to and did make a loan to respondents of $1,250 in return for an $1,800 note. It was also shown respondents agreed to pay 6½ per cent interest while the note provided for 7½ per cent. The agreement was that respondents pay $15 per month on account of interest and principal until the loan was paid in full, while the note he

signed provided for 11 monthly payments of $15 with the balance due on the 12th month. These facts support an award of exemplary damages. (*Ward* v. *Taggart,* 51 Cal.2d 736, 743 [336 P.2d 534].) The trial court's inference that appellant intended to injure respondents by his willful acts is a finding of fact. [9] The general rule is that if there are substantial facts upon which the trial court has based its findings the appellate court will not reweigh the evidence and the rule applies whether the damages awarded are general or exemplary. (*Finney* v. *Lockhart,* 35 Cal.2d 161, 164 [217 P.2d 19]; *Berniker* v. *Berniker, supra.*)

The judgment decreeing the promissory note to be usurious and awarding respondents three times the amount of interest paid, being the sum of $376.41, is affirmed. The judgment awarding respondents $500 exemplary damages is affirmed. The decree declaring the promissory note and deed of trust to be void is reversed with directions to the trial court to enter a judgment decreeing that the unpaid balance of the money actually loaned respondents shall be paid at the rate of $15 per month and that appellants be enjoined from accelerating said note or foreclosing the deed of trust as long as the payments are made.

Kaufman, P. J., and Draper, J., concurred.