[Civ. No. 26392.   Second Dist., Div. Four.   Mar. 21, 1963.]

ABRAHAM EHRLICH et al., Plaintiffs and Appellants, v. F. BRITTON McCONNELL, as Insurance Commissioner, Defendant and Respondent.

David Pick for Plaintiffs and Appellants.

Stanley Mosk, Attorney General, and Arthur C. de Goede, Deputy Attorney General, for Defendant and Respondent.

BURKE, P. J.—Appellants appeal from a judgment of the superior court which denied their petition for a writ of mandate to compel respondent Insurance Commissioner to set aside his decision suspending their licenses for a period of six months.

Appellants are licensed insurance agents and brokers and in October 1957 they made a concerted effort to attract "bad risk" business from persons whose drivers' licenses had been suspended or reinstated. Approximately 90 per cent of appellants' business was secured by soliciting such persons.

An accusation was filed by respondent with the Department of Insurance charging appellants basically with misrepresentation in advertising and in financing insurance premiums in a manner constituting loans of money at usurious interest rates. Such conduct was alleged grounds for suspension or revocation of licenses under sections 1668 and 1738 of the Insurance Code.

Appellants filed a defense to the accusation alleging (a) unconstitutional discrimination, (b) a general demurrer, in effect, (c) the statute of limitations as to evidence and acts, (d) laches, and (e) unclean hands of the Insurance Commissioner.

At the hearing on the accusation appellants first moved to try the issue of unconstitutional discrimination before receipt of evidence on the merits of the case. This motion was denied. The preliminary objections of appellants to the proceedings were overruled except as to certain paragraphs of the accusation to which objections were sustained on the ground that these paragraphs failed to state acts or omissions on which the department could proceed. Upon conclusion of the hearing, the hearing officer determined that the appellants' conduct justified disciplinary action and proposed a revocation of appellants' licenses and a 10-day suspension from business as a condition of the issuance of restricted licenses to appellants revocable at any time by the commissioner with or without hearing which would become unrestricted after one year upon a showing of compliance with the law. Respondent Insurance Commissioner rejected the proposed decision and rendered his own suspending appellants' licenses for six months. Reconsideration was requested but denied. The suspension period elapsed January 27, 1961.

An alternative writ issued and respondent's return thereto placed the matter at issue. The court rendered judgment denying the petition for writ of mandate and discharged the alternative writ. Appellants' motion for a new trial was denied and they appeal from the judgment.

The causes for the disciplinary action taken by respondent in this matter were that the appellants' conduct constituted cause for disciplinary action under section 1668, subdivisions (b), (e), and (i), Insurance Code, basically that the appellants were lacking in integrity and had previously engaged in a fraudulent practice or act or had conducted business in a dishonest manner. Appellants seek by this appeal to establish the propriety of their conduct. The attempt is unavailing.

The findings of the court with respect to misleading advertising are supported by substantial evidence. Without reviewing it in detail suffice to say that solicitation letters and advertising were deceptive and misleading; they inferred that appellants could place automobile insurance at lower rates than could others because of their "new volume plan." The letters were directed to individuals who had their licenses suspended or reinstated and whose insurance appellants intended to place through the assigned risk plan. However, under this plan the companies rotate on a list, thus the amount of premium is almost completely a matter of chance. The premium is con-

trolled by the company not by the agent. In fact, it is not necessary under the plan that one need proceed through a broker or agent but may apply directly to the manager of the plan and the next casualty company in line to receive an assignment is assigned the risk. The applicant may then deal with that company. The company must accept or reject the application within three days and in case of acceptance the premium is stated and must be paid before the issuance of the policy.

Further, the letters were of the same general type and form as that of official correspondence of the Motor Vehicle Department and the phraseology such as would imply an official connection with the state government. Such offenses, however, were relatively of minor importance compared to the results effected through their means. As a result of such solicitation prospective insureds after contacting appellants would be induced to make an application under the assigned risk plan and to sign a contract with appellants by the terms of which appellants would ''advance'' the premium to the insurance company. The prospective insured would agree to pay appellants over a period of time (generally four to six months) for the amount of such premium plus ''charges'' in the approximate amount of 10 per cent of the premium, less any down payment that may have been received. The sole purpose of such contract, as expressly stated therein, is to finance the insurance premium. The ''charges'' for such service amount to an interest rate of approximately 40 per cent per annum. So, instead of being charged ''low rates'' by reason of a ''volume'' plan the insured paid 40 per cent more than he would have had he applied for the insurance himself.

The trial court found, as did respondent, that appellants, in the manner above described, loaned money to prospective insureds to finance insurance premiums at usurious interest rates.

Article XX, section 22,* of the California Constitution provides in part that: ''... it shall be competent for the parties to any loan or forbearance of any money, goods or things in action to contract in writing for a rate of interest not exceeding 10 per cent per annum. No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan . . .''

---

*There are two sections of this number.

Appellants first contend, as they did at the trial level, that rather than a loan of money being here involved the contracts partake of the nature of conditional sales contracts to which the usury laws do not apply. This is the case, they contend, where agreed regular installment payments are made on a ''sale'' of property which they claim is the nature of their transactions.

The appellants, in their contracts with the insureds, designated themselves as ''seller'' and the insured as ''buyer.'' Such form is superficial and in determining whether a sale is involved one looks to the substance not the form of the transaction. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 340-341 [163 P.2d 869, 165 A.L.R. 621]; *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 616-617 [254 P. 956, 255 P. 805, 53 A.L.R. 725].)

Appellants assert transactions within the usury law must be either a loan of money or forbearance of money, goods or things in action. In order for a loan to exist, they say, one party must transfer a sum of money to another which the latter agrees to return at a later date, and since no money was delivered to the insureds in this case no loan was involved.

Respondent correctly viewed such a transaction as a loan and the ''charge'' as interest for the use of money and therefore usurious; contended that no actual delivery of money is required to be made to the prospective insured; and that delivery thereof to a third person on behalf of the borrower is sufficient. (*Harris* v. *Gallant*, 183 Cal.App.2d 94 [6 Cal. Rptr. 630].)

Appellants next contend the transaction is a sale or loan of credit and that the usury law is not applicable thereto, citing the case of *Oil City Motor Co.* v. *C.I.T. Corporation*, 76 F.2d 589 [104 A.L.R. 240]. In the latter case, C.I.T. paid to the manufacturer the purchase price of automobiles to be purchased by a retail dealer. The dealer took possession under trust receipts whereby title was vested in the finance company. The dealer held the automobiles as trustee for resale and reimbursement of the purchase price. The court declared the transaction to be a loan of credit and not a loan of money. The case is not analogous to the instant case. Here the appellants ''advanced'' money for the premium on insurance to the insurance company for a policy which was immediately issued to the insured. Appellants had no interest whatever in the policy. So, respondent claims, there is no ''sale'' involved as a sale contemplates subject matter sold; and there

is no credit involved other than as an aspect of a loan, as the insured did not look to some third person for the money to be used.

Appellants contend that any doubt concerning the transactions in which they engaged should be resolved in favor of their legality; that to hold to the contrary would have the effect of nullifying section 2982 of the Civil Code or declaring it unconstitutional. This section permits a charge of one per cent of the unpaid balance on an automobile purchase contract multiplied by the number of months of the contract. If insurance premiums are included in the contract balance this might operate to permit a charge in excess of 20 per cent simple interest. Respondent indicates however, that the insurance charge could be considered as paid by the down payment thus making proper the charges otherwise permitted by the section. In any event the section is not involved here and this decision has no bearing upon it. Whether proof of having engaged in a transaction found to be usurious, standing alone, constitutes grounds for denial, suspension or revocation of a license is not decided in this decision. The subject of usury is considered only because the amount of the charges imposed constitutes a segment of appellants' business methods which demonstrate their lack of integrity and prove that they had conducted business in a dishonest manner.

The foregoing are the basic issues in this appeal. Many other considerations are raised by appellants respecting procedures, evidence and findings. The first of these, stressed particularly by appellants, is the refusal of the hearing officer to first determine the issue of asserted unconstitutionality of the proceeding due to discrimination.

Much reliance is placed by appellants on the case of *United Ins. Co.* v. *Maloney,* 127 Cal.App.2d 155, 157 [273 P.2d 279], in which the court stated: "A charge of unconstitutional action goes to the very jurisdiction of the administrative officer or body to entertain the proceeding and hence is a matter which he or it must consider and decide at the outset of the proceeding." Such finding, using the term "must," is interpreted by appellants here to be mandatory; that to regard it as directory or discretionary would render it ineffective and meaningless and accordingly they assert that the hearing officer here should not have proceeded with the hearing without first resolving this issue. Appellants claim they alone were singled out, among many companies operating in the same manner as appellants, for discriminatory disciplinary action. The above

quoted holding in *United Ins. Co.* v. *Maloney, supra,* 127 Cal. App.2d 155, was dictum and not mandatory in its application to this matter. In that case petitioners sought a writ in the superior court restraining the Insurance Commissioner from proceeding on a hearing of accusations against them upon grounds similar to those asserted by appellants here; that the commissioner was intentionally discriminating against them. The appellate court ruled petitioners must first exhaust their administrative remedy thus ordering the hearing to proceed. The question of order of proof was not in issue and it would appear that no hard and fast rule should be applied. By way of analogy, in court proceedings, defenses are not normally heard first but follow presentation of the case in chief. (Code Civ. Proc., § 607.) The order of proof is normally reposed in the sound discretion of the court. (Code Civ. Proc., §2042.) Section 597 of the Code of Civil Procedure places within the discretion of the trial judge whether to proceed to the trial of a special defense, not involving the merits of the plaintiff's cause of action, but constituting a bar or ground of abatement in advance of the trial of the case on its merits.

Pursuant to section 1738 of the Insurance Code, hearings upon revocation or suspension of licenses are conducted under the provisions of chapter 5 of part 1 of division 3, title 2 of the Government Code, sections 11500 et seq. Section 11513 of the Government Code provides such hearings need not be conducted according to technical rules relating to evidence or witnesses. Section 11512 provides the hearing officer, when hearing a case alone, shall exercise all powers relating to the conduct of the hearing. Thus, in the case at bench, the order of procedure was properly a matter addressed to the discretion of the hearing officer.

It is presumed that official duty has been regularly performed. (Code Civ. Proc., § 1963, subd. 15.) This presumption is evidence and will support a finding that respondent did not discriminate in the absence of evidence to the contrary. (See *People* v. *Siemsen,* 153 Cal. 387, 390-391 [95 P. 863]; *Adler* v. *Blair,* 169 Cal.App.2d 92, 95 [336 P.2d 971].)

Appellants point to certain testimony from which they request this court to draw inferences as proof of discrimination against them. This court will not reweigh the evidence where substantial evidence supports the judgment. The record discloses ample evidence of usurious trafficking by appellants and by others with an investigation pending from

which the court could well infer the other offenders would be proceeded against in due course. The fact that respondent saw fit to proceed against one of several wrongdoers does not, standing alone, support a charge of unconstitutional discriminations. (*In re Finn,* 54 Cal.2d 807, 812-813 [356 P.2d 685].)

■ To sustain such a charge it would have been necessary to show that other violators not only had not been, but would not be, proceeded against; also that the failure to proceed against the others was not due to a mere laxity of enforcement or some other reason, but was arbitrary, purposeful and with the intent to discriminate against appellants. (*People* v. *Gordon,* 105 Cal.App.2d 711, 721 [234 P.2d 287]; *Wade* v. *City & County of San Francisco,* 82 Cal.App.2d 337, 339 [186 P.2d 181].)

Appellants next attack the findings of the court as ambiguous, uncertain, contradictory and in irreconcilable conflict. The argument is two pronged: (1) the trial court (as did respondent) found the appellants were not in violation of sections 781, 783 and 1668, subdivisions (j) and (1), of the Insurance Code, dealing with misrepresentation, incompetency, untrustworthiness, wrongful, fraudulent or dishonest practices, yet found they had used deceptive and misleading advertising and (2) the trial court found appellants had engaged in a ''fraudulent practice or act *or* conducted a business in a dishonest manner'' notwithstanding its negative findings with respect to the above numbered sections of the Insurance Code.

■ An appellate court must make every intendment in favor of the judgment, and erroneous conclusions of law or unsupported or erroneous findings of fact will be disregarded as being harmless error if judgments, as rendered, can be sustained and proper findings made by the trial court. (*Hay* v. *Allen,* 112 Cal.App.2d 676, 681 [247 P.2d 94]; *Carlson* v. *Brickman,* 110 Cal.App.2d 237, 248 [242 P.2d 94].) There is ample evidence to support the findings which in turn do support the judgment. Furthermore, this apparent conflict in findings was not raised in the trial court, nor was any inconsistency in findings indicated in appellants' petition for writ of mandate. ■ Objections that findings are uncertain or not sufficiently explicit must be raised at the trial level. (See *Miller* v. *Brown,* 136 Cal.App.2d 763, 773 [289 P.2d 572].)

■ Assuming the matter to have been properly raised any such uncertainty or ambiguity would in any event be construed to support rather than defeat the judgment. (*Denbo* v. *Senness,* 120 Cal.App.2d 863, 868 [262 P.2d 31].)

Appellants claim the court failed to find on all material issues and the judgment must therefore be reversed. Appellants had requested specific findings, 20 in number, which need not be repeated here, and stated the general rule: "It is elementary that a failure to find on all material issues raised by the pleadings is ground for reversal [citations]." (*Kaiser* v. *Mansfield*, 141 Cal.App.2d 428, 433 [297 P.2d 98].) The argument assumes the requested findings were all on material issues and were not embraced by or negatived by the findings rendered. ■ Respondent properly contends that findings need be concerned only with material issues of ultimate facts, not evidentiary matters; that there is no need to find on issues not raised; and if an allegation is admitted no issue arises and no finding is necessary. ■ Our review of the findings indicates they are adequate to support the judgment. The failure to make other findings cannot be prejudicial. (*Brown* v. *Schroeder*, 88 Cal.App. 192, 201 [263 P. 325].) Every allegation of the petition for writ of mandate attacking respondent's decision or the propriety of the procedures at the administrative level was found to be untrue.

All other contentions of appellants have been reviewed. None merit reversal of the judgment and to discuss each in turn would unduly prolong this opinion.

The judgment is affirmed.

Jefferson, J., and Bishop, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.